JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ronald R. Ferrara

**DEFENDANTS**
AXA Equitable Life Insurance Company

**(b)** County of Residence of First Listed Plaintiff    Chester, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New York, NY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Charles J. Arena, Esq.
583 Skippack Pike, Suite 100
Blue Bell, PA 19422    (215) 540-0300

Attorneys *(If Known)*
Steven J. Schildt (POST & SCHELL, P.C.)
Four Penn Ctr., 13th Fl.    1600 John F. Kennedy Blvd.
Philadelphia, PA 19103    (215) 587-1089

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 1332
Brief description of cause:
Insurance coverage, breach of contract, and bad faith action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
> 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
09/03/2015

SIGNATURE OF ATTORNEY OF RECORD
*Steve Schildt*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar.**

Address of Plaintiff:   1214 Pickering Lane, Chester Springs, PA 19425

Address of Defendant:   1290 Avenue of the Americas, New York, NY 10104

Place of Accident, Incident or Transaction:   Chester County, Pennsylvania
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?          Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number:   N/A          Judge   N/A          Date Terminated:   N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes ☐   No ☒

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes ☐   No ☒

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes ☐   No ☒

4.   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes ☐   No ☒

CIVIL:

| A. | *Federal Question Cases:* | B. | *Diversity Jurisdiction Cases:* |
|----|---------------------------|----|---------------------------------|
| 1. | ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. | ☒ Insurance Contract and Other Contracts |
| 2. | ☐ FELA | 2. | ☐ Airplane Personal Injury |
| 3. | ☐ Jones Act-Personal Injury | 3. | ☐ Assault, Defamation |
| 4. | ☐ Antitrust | 4. | ☐ Marine Personal Injury |
| 5. | ☐ Patent | 5. | ☐ Motor Vehicle Personal Injury |
| 6. | ☐ Labor-Management Relations | 6. | ☐ Other Personal Injury (Please specify) |
| 7. | ☐ Civil Rights | 7. | ☐ Products Liability |
| 8. | ☐ Habeas Corpus | 8. | ☐ Products Liability — Asbestos |
| 9. | ☐ Securities Act(s) Cases | 9. | ☐ All other Diversity Cases (Please specify) |
| 10. | ☐ Social Security Review Cases | | |
| 11. | ☐ All other Federal Question Cases (Please specify) | | |

# ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Steven J. Schildt, Esq.          , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

**DATE: September 3, 2015**          *Steve Schildt*          79011
                                       Attorney-at-Law          Attorney I.D. #

**NOTE:**   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

**DATE: September 3, 2015**          *Steve Schildt*          79011
                                       Attorney-at-Law          Attorney I.D. #

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD R. FERRARA | ) | |
| Plaintiff | ) | CIVIL ACTION NO._____ |
| v. | ) | |
| | ) | |
| AXA EQUITABLE LIFE INSURANCE | ) | |
| COMPANY | ) | |
| Defendant | ) | |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)


| | | |
|---|---|---|
| 9/3/2015 | _Steve Schildt_ | Defendant |
| **Date** | Steven J. Schildt, Esq. | **Attorney for** |
| | **Attorney-at-law** | |
| | | |
| (215) 587-1089 | (215) 587-1444 | sschildt@postschell.com |
| **Telephone** | **FAX Number** | **E-mail Address** |

**(Civ. 660) 10/02**

**POST & SCHELL, P.C.**                    Attorneys for Defendant
BY: STEVEN J. SCHILDT, ESQ.
I.D. # 79011
1600 JFK BLVD., 13TH FLOOR
PHILADELPHIA, PA 19103
PHONE: 215-587-1089
E-MAIL: sschildt@postschell.com

| | |
|---|---|
| RONALD R. FERRARA | IN THE COURT OF COMMON PLEAS |
| Plaintiff | CHESTER COUNTY |
| vs. | NO. 15-06876 |
| AXA EQUITABLE LIFE INSURANCE COMPANY | |
| Defendant | |

## DEFENDANT'S NOTICE OF REMOVAL

TO:   Charles J. Arena, Esq.
      583 Skippack Pike, Suite 100
      Blue Bell, PA 19422

Defendant has filed a Notice in the United States District Court for the Eastern District of Pennsylvania for removal of a civil action pursuant to 28 U.S.C. §1441, et seq., now pending in the Court of Common Pleas for Chester County. Said case qualifies under diversity jurisdiction pursuant to 28 U.S.C. §1332. Specifically, the parties are of diverse citizenship and the amount in controversy as alleged in the complaint is more than $75,000. Defendant has also filed in the Eastern District of Pennsylvania a copy of the complaint served upon it.

                                        **POST & SCHELL, P.C.**

                          **BY:**   _Steven Schildt_

                                        **STEVEN J. SCHILDT, ESQ.**
                                        Attorney for Defendant

**DATE:** 9/3/15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD R. FERRARA** | ) | |
| **Plaintiff** | ) | **CIVIL NO.** _____ |
| **v.** | ) | |
| | ) | |
| **AXA EQUITABLE LIFE INSURANCE** | ) | |
| **COMPANY** | ) | |
| **Defendant** | ) | |

## DEFENDANT'S NOTICE OF REMOVAL

1.      On July 5, 2015, defendant AXA Equitable received the complaint. A copy of the complaint and its exhibits are attached hereto.

2.      Plaintiff's complaint concerns the handling of claims for disability benefits under two disability policies issued by defendant.

3.      This Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

4.      The plaintiff is a citizen of Pennsylvania. See paragraph 1 of complaint caption.

5.      Defendant is incorporated in New York and also had its principal place of business in New York.

6.      Thus, we have Pennsylvania versus New York, which is complete diversity.

7.      Count 1 of the complaint seeks $1,500 per month from 6/1/10 to the present (said amount being $94,500). Count 2 of the complaint seeks $4,067 from 7/1/10 to the present (said amount being $252,154).

8.      Count 3 alleges insurance bad faith and seeks punitive damages. .

9.      Demands for punitive damages are included in the calculation of the amount in controversy. See, e.g., Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) ("a request for

punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.").

10.     Further, counts for breach of contract and insurance bad faith can be aggregated to meet the $75,000 amount in controversy requirement.  See, e.g., Ketz v. Progressive Northern Ins. Co., 2007 U.S. Dist. LEXIS 43245, *7-9 (M.D. Pa. 2007); Brown v. Liberty Mut. Fire Ins. Co., 2006 U.S. Dist. LEXIS 76139, *8 (E.D. Pa. 2006).

11.     The instant action satisfies diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332 because all parties are of diverse citizenship and the amount in controversy as alleged by plaintiff is in excess of $75,000.

12.     Defendant's Notice of Removal has been filed within 30 days of service of the complaint and is therefore timely under 28 U.S.C. §1446.

13.     Defendant has also filed copies of this Notice with the Prothonotary of the Chester County Court of Common Pleas in order to effect removal of this action pursuant to 28 U.S.C. §1446(d).


                                        **POST & SCHELL, P.C.**

                            **BY:**     _Sto  Scdt_
                                        **STEVEN J. SCHILDT, ESQ.**
                                        **I.D. # 79011**
                                        Attorney for Defendant
                                        1600 JFK Blvd., 13th Floor
                                        Philadelphia, PA 19103
                                        Phone: 215-587-1089
                                        E-mail: sschildt@postschell.com

**DATE:**  9/3/15

2

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that the attached Removal Package has been served and filed this day via

regular mail to the following person(s):

Charles J. Arena, Esq.
583 Skippack Pike, Suite 100
Blue Bell, PA 19422

Prothonotary
Chester County Court of Common Pleas
201 West Market Street
P.O. Box 2746
West Chester, PA 19380-0989

POST & SCHELL, P.C.

BY: _____

STEVEN J. SCHILDT, ESQ.
I.D. # 79011
Attorney for Defendant
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com

DATE: 9/3/15

*Served by hand on*
*8/5/15 @ 3:40pm*
*JS*

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
## CHESTER _____ County

| For Prothonotary Use Only: |
|---|
| Docket No: |
| **15-06876** |

**Law Department**

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*  AUG - 5 2015

---

**SECTION A**

**Commencement of Action:**
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

**Referred to** _____

| Lead Plaintiff's Name: Ronald R. Ferrara | Lead Defendant's Name: AXA Equitable Life Insurance Company, formerly known as The Equitable Life Assurance Society of the United States |
|---|---|
| Are money damages requested? [X] Yes  [ ] No | Dollar Amount Requested: (check one)   [ ] within arbitration limits  [X] outside arbitration limits |
| Is this a *Class Action Suit?* [ ] Yes  [X] No | Is this an *MDJ Appeal?* [ ] Yes  [X] No |

Name of Plaintiff/Appellant's Attorney: Charles J Arena, Esquire

[ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

---

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other _____

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other _____

- [X] Other: Contract Disability Policy _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other _____

- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*



# Chester County
# Court of Common Pleas
# Cover Sheet

Docket No:

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney (circle one) (Name, firm, address, telephone and attorney ID#) |
|---|---|
| Ronald R. Ferrara<br>1214 Pickering Lane<br>Chester Springs, Pennsylvania  19425 | Charles J Arena, Esquire<br>583 Skippack Pike, Suite 100, Blue Bell, PA 19422<br>(215) 540-0300<br>Attorney ID# 28154 |
| Defendant(s): (Name, Address)<br>AXA Equitable Life Insurance Company, formerly<br>known as The Equitable Life Assurance Society<br>of the United States<br>1290 Avenue of the Americas<br>New York, New York 10104 | Are there any related cases? Please provide case nos.<br>No |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached.**

If this is an appeal from a Magisterial District Judgment, was appellant ◯ Plaintiff or ◯ Defendant in the original action?

Jury Trial Demanded    ◯ Yes    ⦿ No

## Nature of case if not on previous cover sheet – Please choose the most applicable

| | | |
|---|---|---|
| ▢ Annulment | ▢ Writ of Certiorari | |
| ▢ Custody · Conciliation Required | ▢ Injunctive Relief | |
| ▢ Custody· Foreign Order | ▢ Mechanics Lien Claim | |
| ▢ Custody - No Conciliation Required | ▢ Issuance of Foreign Subpoena | |
| ▢ Divorce - Ancillary Relief Request | ▢ Name Change | |
| ▢ Divorce - No Ancillary Relief Requested | ▢ Petition for Structured Settlement | |
| ▢ Foreign Divorce | | |
| ▢ Foreign Protection from Abuse | | |
| ▢ Paternity | | |
| ▢ Protection from Abuse | | |
| ▢ Standby Guardianship | | |

### Arbitration Cases Only

Arbitration Date ▭

Arbitration Time ▭

Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition from occurring prior to the arbitration date.

This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties.  There is no right to a trial *de novo* on appeal from a decision entered by a judge.

### Notice of Trial Listing Date

Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filed unless otherwise ordered by the Court.

To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date.

**File with:**  Chester County Justice Center,  Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.
Submit enough copies for service.

**CHARLES J. ARENA, ESQUIRE**     Attorney for Plaintiff
Electronic Mail: cejarena@gmail.com
Identification No. 28154
583 Skippack Pike, Suite 100
Blue Bell, PA  19422
215-540-0300

---

| | | |
|---|---|---|
| RONALD R. FERRARA | : | **CHESTER COUNTY** |
| 1214 Pickering Lane | : | **COURT OF COMMON PLEAS** |
| Chester Springs, Pennsylvania  19425 | : | **CIVIL TRIAL DIVISION** |
| | : | |
| vs. | : | **TERM,** |
| | : | |
| AXA EQUITABLE LIFE INSURANCE | : | NO. *15- 06876* |
| COMPANY, formerly known as | : | |
| The Equitable Life Assurance Society | : | |
| of the United States | : | |
| 1290 Avenue of the Americas | : | |
| New York, New York  10104 | : | |

## NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral and Information Services
Chester County Bar Association
15 West Gay Street
West Chester, PA 19380
(610) 429-1500

1

## CIVIL ACTION – COMPLAINT

1.      The plaintiff, Ronald R. Ferrara, is an individual residing at 1214 Pickering Lane, Chester Springs, County of Chester, Commonwealth of Pennsylvania 19425.

2.      The defendant, AXA Equitable Life Insurance Company, formerly The Equitable Life Assurance Society of the United States, is a life insurance company licensed to sell insurance products including disability policies in the Commonwealth of Pennsylvania with offices located at 1290 Avenue of the Americas, New York, New York 10104.

3.      AXA Equitable Life Insurance Company is the successor in interest to all rights and obligations of The Equitable Life Assurance Society of the United States and is obligated to administer and pay all claims in accordance with the policy of insurance issued herein by The Equitable Life Assurance Society of the United States.

4.      At all times referred to herein, the defendant acted by and through its agents, servants and employees who were then and there acting within the course and scope of their employment and authority.

5.      On or about February 25, 1993 the plaintiff completed an application for non-cancellable disability insurance with The Equitable Life Assurance Society of the United States.

6.      On this date and by this application, plaintiff enrolled himself under a policy of disability insurance bearing policy number 93 703 022 written and made available to him and in so doing insured him against total disability.  Attached hereto as Exhibit "A" is a copy of the application and policy of insurance.

7.      On or about February 25, 1993 the plaintiff completed a second application for non-cancellable disability insurance with The Equitable Life Assurance Society of the United States.

8.     On this date and by this application, plaintiff enrolled himself under a policy of disability insurance bearing policy number 93 703 020 written and made available to him and in so doing insured him against total disability.  Attached hereto as Exhibit "B" is a copy of the application and policy of insurance.

9.     On or about August 5, 2013 the plaintiff knew or should have known that he was totally disabled within the meaning and terms of the aforesaid policies.

10.    On or about February 12, 2014 the plaintiff submitted a completed application to defendant for disability benefits under said policies.

11.    Subsequent to February 2014, a claims support representative of Disability Management Services, Inc., a third party administrator for AXA Equitable Life Insurance Company, began to correspond with plaintiff and requested additional information in order to process his application for total disability benefits under the aforesaid policies.

12.    From March of 2014 through the present, the plaintiff has cooperated with and provided the defendant with numerous information including but not limited to physician disability statements, authorizations, tax returns, statements and medical records in order to process his disability claims.

13.    The defendant, by and through its various claims support representatives, has failed to approve or deny plaintiff's claim for total disability benefits and continues to request additional irrelevant information in order to determine plaintiff's disability status and right to benefits.

14.    The plaintiff has made proper demand upon defendant for payment of the benefits under the aforesaid insurance policies and has to date not received the same.

3

15.     In further violation of the policies and the laws of the Commonwealth of Pennsylvania, the defendant unreasonably and unfairly withheld policy benefits.  The conduct of the defendant included, but is not limited to, the following:

(a)     Failing to give equal consideration to paying the claims as to not paying the claims;

(b)     Failing to objectively and fairly evaluate the plaintiff's claims;

(c)     Asserting policy defenses without a reasonable basis in fact;

(d)     Compelling the institution of this Complaint in order to obtain policy benefits that should have been paid promptly and without the necessity of litigation;

(e)     Dilatory and abusive clams handling;

(f)     Threatening to deny coverage unless the plaintiff provided personal documents and/or interviews and/or overly extensive examinations under oath not required by the policies;

(g)     Unreasonably valuing the loss and further failing to fairly negotiate the amount of loss with the plaintiff or plaintiff's representatives;

(h)     Placing unduly restrictive and self-serving interpretations on the policies and/or claim forms;

(i)     Failing to provide a complete copy of the policies, together with all updated endorsements to the plaintiff or the plaintiff's representative;

(j)     Failing to keep the plaintiff fairly and adequately advised as to the status of the claims;

(k)     Acting unreasonably and unfairly in response to the plaintiff's claim;

(l)     Failing to promptly provide a reasonable factual explanation of the basis for not paying benefits which effectively resulted in a denial of the plaintiff's claims; and

4

(l)     Otherwise unreasonably and unfairly withholding policy benefits justly due and owing the plaintiff.

## COUNT ONE

### BREACH OF CONTRACT UNDER POLICY NUMBER 93 703 022

16.     The plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 15, inclusive of this Complaint, as though the same were set forth at length.

17.     Under the above circumstances, a contract of insurance was created with defendant under which plaintiff was insured against his total disability such that by and upon his total disability, the defendant became obligated to pay plaintiff the benefits under the contract of $1,500 per month after an elimination period of sixty (60) days.

18.     Plaintiff has performed or satisfied all obligations of the insurance contract required by him.

19.     The defendant has breached and violated the terms and conditions of the contract such that the plaintiff is entitled to damages of $1,500 per month from June 1, 2010 to the present and into the future under the terms and conditions of the policy.

WHEREFORE, plaintiff demands judgment against the defendant, AXA Equitable Life Insurance Company, for the sum of $1,500 per month beginning June 1, 2010 to the present and into the future together with interest from June 1, 2010 and costs.

## COUNT TWO

### BREACH OF CONTRACT UNDER POLICY NUMBER 93 703 020

20.     The plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 15, inclusive of this Complaint, as though the same were set forth at length.

21.     Under the above circumstances, a contract of insurance was created with defendant under which plaintiff was insured against his total disability such that by and upon his total disability, the defendant became obligated to pay plaintiff the benefits under the contract of $4,067 per month after an elimination period of ninety (90) days.

22.     Plaintiff has performed or satisfied all obligations of the insurance contract required by him.

23.     The defendant has breached and violated the terms and conditions of the contract such that the plaintiff is entitled to damages of $4,067 per month from July 1, 2010 to the present and into the future under the terms and conditions of the policy.

WHEREFORE, plaintiff demands judgment against the defendant, AXA Equitable Life Insurance Company, for the sum of $4,067 per moth beginning July 1, 2010 to the present and into the future together with interest from June 1, 2010 and costs.

## COUNT THREE

### BAD FAITH

24.     The plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 15, inclusive of this Complaint, as though the same were set forth at length.

25.     For the reasons set forth above, including but not limited to, failing to promptly pay plaintiff total disability benefits, failing to objectively and fairly evaluate the plaintiff's claim and application for benefits, unreasonably withholding policy benefits and failing to accept or deny plaintiff's total disability benefit claims, the defendant has violated the policies, covenant of good faith and fair dealing and/or committed the tort of bad faith including but not limited to, violating 42 Pa.C.S.A. Section 8371, for which the defendant is liable for interest on the claims from the date the claims were made in an amount equal to the prime rate of interest plus 3%,

6

court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, plaintiff demands compensatory, consequential and punitive damages from the defendant, AXA Equitable Life Insurance Company, in an amount in excess of Fifty Thousand Dollars ($50,000.) plus interest, costs of court, attorney's fees, and such other relief as this Court deems just and proper.

CHARLES J. ARENA, ESQUIRE
Attorney for Plaintiff

7

**VERIFICATION**

RONALD R. FERRARA, being duly sworn according to law, deposes and says that he is the plaintiff in the within Civil Action Complaint and that the facts set forth therein are true and correct to the best of his knowledge, information and belief.  The undersigned understands that any false statements therein are made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

*Ronald Ferrara*
Ronald R. Ferrara

Date: 7/30/2015

8

| | |
|---|---|
| **POLICY NUMBER** | 93  703  020 |
| **THE INSURED** | MR  RONALD  R  FERRARA |
| **EFFECTIVE DATE** | FEB 25, 1993 |
| **MONTHLY INCOME** | $1,500.00 |

**THE EQUITABLE**

THE EQUITABLE
LIFE ASSURANCE SOCIETY
OF THE UNITED STATES

**DISABILITY**

**INCOME**

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, New York, New York

e will pay benefits that this policy provides for loss that results from Injury or Sickness. Injury and Sickness are fined on page 5. This agreement is subject to the exceptions and other provisions of this policy.

## NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

nis policy cannot be cancelled by us' before you reach age 65. If you pay the premium in accordance with policy rovisions, it will continue in force until the first policy anniversary on or after your 65th birthday. Before then and hile the policy is in force, we cannot increase the premium schedule.

## NOTICE OF 10 DAY RIGHT TO EXAMINE POLICY

/ithin 10 days after you receive this policy, you may return it to us or to the agent through whom you bought it ith a request that it be cancelled. That request and return will void the policy from the beginning. We will then :fund any premium paid.

The provisions on the following pages are a part of this contract.

This is a non-participating policy.

_Molly K. Heines_

Vice President and Secretary

_Richard H. Jenrette_

Chairman and Chief Executive Officer

DI 133 PA-6

Exhibit "A"

# *TABLE OF CONTENTS*

| | *Page* |
|---|---|
| Renewable | 1 |
| Ten-day Right to Examine Policy | 1 |
| Definitions | 5 |
| Benefit Provisions | 6 |
| Concurrent and Recurrent Disabilities | 6 |
| Premium Waived or Refunded | 6 |
| Pre-Existing Conditions Exclusion | 7 |
| Exceptions | 7 |
| General Provisions | 8 |
| Grace Period | 8 |
| Reinstatement | 8 |

## IMPORTANT NOTICE

This policy is a legal contract between you and the Equitable Life Assurance Society of the United States. PLEASE READ YOUR POLICY CARE-FULLY.

| THE INSURED | RONALD R FERRARA | FEB 25, 1993 PPA | EFFECTIVE DATE |
| MONTHLY INCOME FOR TOTAL DISABILITY | $1,500.00 | N 93 703 020 | POLICY NUMBER |
| | | 40 M | ISSUE AGE & SEX |

ELIMINATION PERIOD - 60 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60       - LIFETIME OF INSURED
        COMMENCING AT AGE 60 OR LATER  - TO AGE 65
    FOR RESIDUAL DISABILITY            - TO AGE 65

### BENEFITS AND PREMIUMS TABLE

| BENEFITS | SEMI-ANNUAL PREMIUM* | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $485.93 | TO AGE 65 |
| RESIDUAL DISABILITY INDEXING ADJUSTMENT 6% | 58.34 | TO AGE 65 |
| COST OF LIVING ADJUSTMENT 4% TO 6%   ANNUALLY - BASED ON CPI-U | 132.33 | TO AGE 65 |
| GUARANTEED INSURABILITY - AGGREGATE OPTION AMOUNT $1,500 | 20.27 | SEE PAGE 86-44 |

FIRST PREMIUM          $696.87 DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS    $696.87 DUE AUG 25, 1993 AND EVERY  6 MONTHS
                               THEREAFTER DURING PREMIUM PERIOD

                       IN ADDITION, THE PREMIUMS WILL BE REDUCED BASED UPON THE
                       EXPIRY OF THE OPTIONS IN ACCORDANCE WITH THE ABOVE TABLE

DATE OF ISSUE   MAR 22, 1993

# AMENDMENT TO APPLICATION

Name of Proposed
Insured      **MR RONALD R FERRARA**          Application Dated  **FEB 25, 1993**

Policy No.  **93703020**

---

## TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

### This application is hereby amended by the undersigned in the following particulars:

**WITH ANSWER TO QUESTION #6 ON PART I OF APPLICATION AMENDED TO READ NONE**

This amendment is to be taken as a part of said application, subject to the agreement therein contained: said application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the policy or contract. To the best of my knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment.

Dated at _____on_____19_____
            (City )                              (State)

_____        _____
Signature of Purchaser if other than Applicant        Signature of Applicant

Agent: _____

Agency: _____

180-237E App: Amendment.

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
## NEW YORK, N.Y.

### 1. PROPOSED INSURED

Print name as it is to appear on the policy:
**RONALD R FEILRARA**

- ☒ Mr.  ☐ Miss  ☐ Doctor  c. ☒ Male
- ☐ Mrs.  ☐ Ms.  ☐ Other Title  ☐ Female

Birth date Month/Day/Year **2-22-53**   e. Age nearest birthday **40**

Place of Birth (state) **PA**

Citizenship (country) **USA**

Social Security or Tax Number **191441289**

Residence City, State, Zip **DOWNINGTOWN PA 19335**

### 2. OCCUPATION

Current Occupation(s) **SALES MANAGER KITCHEN AIDE**

Current Duties **SALES OF APPLIANCES TO DEALERS WHOLESALE**

Nature of Business **APPLIANCE SALES**

Type of organization:  ☐ S Corporation  ☒ Corporation
☐ Sole Proprietorship  ☐ Partnership  ☐ Other

Are you now working on a full-time basis? ☒ Yes  ☐ No

Do you intend to change your occupation and/or employer within the next year? ☐ Yes  ☒ No

### 3. EARNINGS

a. Source of your gross earned income after business expenses?

|  | Current Annual Rate | Actual Prior Calendar Year |
|---|---|---|
| 1. Current primary occupation? | $ 60,000 | $ 69,000 |
| 2. Any other occupations? | $ | $ |

b. What contributions are made on your behalf to pension funds or profit sharing plans which will not continue in the event of disability? **0** $

c. What is your NET unearned income (from investments, rents, dividends)? **0** $ $

d. What part of your earned income would continue during disability? (show amt.) $ **0** For how long? mos.

e. Does your total net worth exceed $2,000,000? (Omit personal residence) ☐ Yes  ☒ No

If yes, in Details Section, show cash, savings, stocks and bonds, real estate, business interests and value of vested pension fund or profit sharing plan, etc.

**DETAILS SECTION PROVIDED ON PAGES 2 & 3**

### 4. DISABILITY INCOME INSURANCE APPLIED FOR

a. Monthly Income Amount: DI $ **1500** Other $ _____ *

* Describe other coverage(s) _____ and complete appropriate Supplement(s)

b. Will coverage be paid for by employer? ☐ Yes  ☐ No
If "yes" how much? %

c. Occupational Class: **4A** Plan **PL 65**

d. Elimination Period: **60** days

e. Optional Benefits
COLA (choose one) ☒ 4-6% CPI  ☐ 6-8% CPI
☒ Residual 65/W or  ☐ Proportionate Loss of Income
☒ Guaranteed Insurability  Aggregate Amount $ **1500**
☐ Soc. Sec. Supp.E.P. _____ days $/mo _____
☐ Fixed Income E.P. _____ Term _____ $/mo _____
☐ Other Optional Benefits: _____

### 5. ADDITIONAL INFORMATION

a. Will the insurance applied for replace any existing insurance? If yes, indicate in 6 below ☐ Yes  ☒ No
When is the next premium due date for this existing insurance?

b. What is the premium payment mode? **SEMI ANNUAL**

c. Do you now have pending an application, or do you intend to apply within the next six months, for any other disability, life or medical insurance? (If Yes, state companies and amounts in Details Section.) ☐ Yes  ☒ No

d. Have you ever had an application for any insurance, or for renewal or reinstatement of any insurance, declined, postponed, rated-up in premium or otherwise modified, or a policy rescinded? (State companies and full details in Details Section.) ☐ Yes  ☒ No

e. Have you ever applied for or received any type of income or premium waiver benefit or worker's compensation award as a result of disability? (State payer and cause in Details Section.) ☐ Yes  ☒ No

f. Have you smoked a cigarette in the past 12 months? ☐ Yes  ☒ No

g. Have you ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (if yes, complete Driving questionnaire) ☐ Yes  ☒ No

h. Did you within the past year, or do you intend to travel or reside outside the United States? ☐ Yes  ☒ No

### 6. OTHER INSURANCE

Describe all Disability Income and Overhead Expense coverage in force. Include disability benefits in life coverage, pension, union welfare, state disability, civil service, employer or employee benefit plans for franchise or association plans. If none, write "none."

| Company or Organization | Type of Coverage* | Policy # | Amount of Monthly Income | Maximum Benefit Period | | To Be Replaced | | Employer Funded | | Fully Offset By Social Security | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Acc | Sick | Yes | No | Yes | No | Yes | No |
| 1. N/A | | | | | | | | | | | |
| 2. | | | | | | | | | | | |
| 3. | | | | | | | | | | | |

*Key  I—Individual  G—Group  A—Association  E—Employer Sick Pay or Union  BOE—Business Overhead Expense

DI-88 APP(PA) CAT # 125551

1

**(Complete questions 1-5 only if application is on non-medical basis.)**

**1.  PROPOSED INSURED**

a. Height: 6 ft. 2 in.    Weight 258 lbs.    b. Have you had a weight change of more than
                                                 10 pounds in the last 12 months?    ☐ Yes  ☒ No

c. Name and address of your personal physician: (If none, so state)
   DR. BRENNER    MEDICAL CENTER # 100    EXTON PA

d. Date and reason last consulted if within the last 5 years: 1992    COLD

e. What treatment was given or recommended? ANTI BIOTIC

**2.**

Are you now under medical observation or taking medical treatment? _____  ☐ Yes  ☒ No

**3.**

Have you ever been medically treated for or had: (Circle the applicable items)
a. Diabetes, tumor, cancer, glandular or skin disease or disorder?    ☐ Yes  ☒ No
b. Emotional, psychological, mental or nervous system disease or disorder; convulsions or epilepsy?    ☐ Yes  ☒ No
c. Chest pain, high blood pressure, heart attack, stroke or any other disease or disorder of the
   heart or blood vessels?    ☐ Yes  ☒ No
d. Any disease or disorder of the respiratory or digestive systems, including hernia, ulcer, or liver disorder?    ☐ Yes  ☒ No
e. Any disease or disorder of the urinary or reproductive systems? Are you now pregnant?    ☐ Yes  ☒ No
f. Any disease or disorder of the blood or lymphatic systems?    ☐ Yes  ☒ No
g. Any disease or disorder of the muscles or bones, including the back, neck, spine or joints?    ☐ Yes  ☒ No
h. Any disease or disorder of eyes, ears, nose, throat or speech?    ☐ Yes  ☒ No

**4.**

Have you within the last 10 years:
a. Been medically treated for or medically advised to have treatment for a sexually transmitted disease, including
   Gonorrhea, Syphilis, Herpes Simplex II, or Hepatitis B?    ☐ Yes  ☒ No
b. Been diagnosed by a member of the medical profession as having Acquired Immune Deficiency
   Syndrome (AIDS) or Aids-Related Complex (ARC)?    ☐ Yes  ☒ No
c. Been medically treated by a member of the medical profession for AIDS or ARC?    ☐ Yes  ☒ No
d. Used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics except as
   prescribed by a physician (other than yourself, if you are a physician)?    ☐ Yes  ☒ No
e. Received medical treatment regarding the use of alcohol or drugs?    ☐ Yes  ☒ No

**5.**

Other than above, have you within the past 5 years:
a. Consulted or been examined or treated by any physician or practitioner, or visited a psychiatrist,
   psychologist, psychiatric social worker, psychotherapist or counselor for any reason?    ☒ Yes  ☐ No
b. Been a patient in a hospital, clinic, sanatorium, or other medical facility? Had any diagnostic test?    ☐ Yes  ☒ No
c. Been medically advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?    ☐ Yes  ☒ No
d. Had any illness, injury, or surgery? Have you any deformity, lameness or amputation?    ☐ Yes  ☒ No

**6.  DETAILS**

Give details of Yes answers for parts 1 & 2. Include Question Number, Diagnosis and Treatment, Results, Dates and Duration,
Names and addresses of all attending physicians and medical facilities, where applicable. Continuation sheet on Page 3 provided
for additional details:

5a DR F.R. BATZER MD    815 LOCUST ST    PHILA PA
   FERTILITY DR.    B & U + SEMEN TESTS

**7.  DETAILS**

SHEET USED    ☐ Yes  ☒ No

2

This conditional receipt must not be detached unless the application is signed and the first premium is collected.

## AGREEMENT

t is hereby agreed by the undersigned that:

If all of the following conditions precedent to insurance are fulfilled, that is

(a) a completed and properly signed application, Part 1 and Part 2, is furnished to The Equitable, and at least one twelfth of the annual premium for the policy is paid; and

(b) to the best of my knowledge and belief the statements and answers in all parts of the application were true and complete when made and continue to be true and complete, without material change, as of the time of payment of such premium; and

(c) the Equitable is satisfied after such investigation and medical examinations as it may require that the Proposed Insured at the time of payment of such premium insurable under its rules and standards for insurance either exactly as applied for or at a higher premium rate or for a lesser amount of insurance or on some other modified or restricted basis;

then the insurance for which the Proposed Insured is so insurable shall—upon the terms of the policy The Equitable would issue—take effect at either the time of payment of such full first premium or the time of completion of Part 2 of the application, whichever is later.

Unless the conditions precedent specified in (a), (b) and (c) above are fulfilled, no insurance shall take effect.

If the policy is issued other than exactly as applied for, then unless it is accepted and any balance of premium due thereon is paid on or before the 20th day after the "Date of Issue" stated in the policy, the policy shall not take effect and all insurance shall terminate on such 20th day.

If a policy does not take effect, any premium paid in connection with this application will be returned.

If insurance becomes payable under this Agreement, the premium paid for it will be retained.

The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief and are made to induce The Equitable to enter into this Agreement and to issue any policy which may be issued upon this application. No agent or medical examiner has authority to modify this Agreement or to waive any of The Equitable's rights or requirements.  6.90?

| | |
|---|---|
| Amount Paid | Other $ _____ |
| With Application: DI $ | OE $ _____ |

(Checks must be drawn to the order of Equitable Life and are received subject to collection.)

Signature of
Proposed Insured   (X)   *Ronald Ferrara*

Dated at   DOWNINGTOWN         City   PA         State

Dated on
Mo/Day/Year   2-25-93

Signature of
Agent   *Thomas O Pettyjon*

V- 08039

## ACKNOWLEDGEMENT AND AUTHORIZATIONS

**UNDERWRITING PROCEDURES**
I have received a statement of the underwriting procedures of The Equitable Life Assurance Society of the United States (Equitable), which describes how and why Equitable obtains information on my insurability, to whom such information may be reported and how I may obtain it. The statement also contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS**
**To Obtain Medical Information** I authorize any physician, hospital, other medical practitioner or facility, insurance company, and the Medical Information Bureau to release to Equitable and its legal representative any and all information they may have about any diagnosis, treatment and prognosis regarding my physical or mental condition.
**To Obtain Non-Medical Information** I authorize any employer, business associate, government unit, financial institution, Consumer Reporting Agency, and the Medical Information Bureau to release to Equitable and its legal representative any information they may have about any claim of eligibility for benefits or my occupation, avocations, finances, driving record, character and general reputation. I authorize Equitable to obtain investigative consumer reports, as appropriate.

**To Use and Disclose Information** I understand that the information that I authorize Equitable to obtain will be used by Equitable to help determine my insurability or my eligibility for benefits under an existing policy.
I authorize Equitable to release information about my insurability to its reinsurers, my Equitable Agent, and to the Medical Information Bureau, all as described in the statement of Equitable's underwriting procedures, or to other persons or businesses performing business or legal services in connection with my application or claim of eligibility for benefits, or as may be otherwise lawfully required or as I may further authorize.
I understand that I have the right to learn the contents of any report of information (through my physician, in the case of medical information).

**COPY OF AUTHORIZATIONS**
I have a right to ask for and receive a true copy of this Acknowledgement and Authorizations signed by me. I agree that a reproduced copy will be as valid as the original.

**DURATION**
I agree that these authorizations will be valid for 12 months from the date shown below.

*Ronald R Ferrara*
Signature of Proposed Insured

Date
Mo/Day/Year   2-25-93

CAT # 125551

4

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
## CPI COST OF LIVING ADJUSTMENT RIDER 65

This rider is subject to all of the provisions of this policy. The cost for it is shown on page 3.

### 1. Definitions

**CPI-U** means the Consumer Price Index for the United States, all items, all Urban Consumers. The CPI-U is published by the Bureau of Labor Statistics of the U.S. Department of Labor. If the method for determining this index is changed so that it becomes inconsistent with previous measures, or if this index is no longer published, we will substitute another index found to serve the same purpose.

**CLAIM ANNIVERSARY DATE** means the date immediately following each 12 month period of continuous disability.

**ANNUAL ADJUSTMENT FACTOR** means the CPI-U as of the last day of the calendar month three months before the current Claim Anniversary Date divided by the CPI-U as of the last day of the calendar month three months before the previous Claim Anniversary Date (or the onset of disability date, if you are beginning the second year of disability). This factor will be rounded to the nearer thousandth.

The Annual Adjustment Factor in any year will never be lower than 1.040 or higher than 1.060.

### 2. Increase in Total Disability Benefit

After you have been Disabled, as defined in this policy for 1 year, the Annual Adjustment Factor will be applied on each Claim Anniversary Date to increase your Monthly Income for that continuous period of Total Disability.

The adjustment to be applied to the Monthly Income shown on page 3 is:
a) for the 2nd year (13th through 24th months), the Annual Adjustment Factor;
b) for each remaining year, the prior year's adjustment again increased by the Annual Adjustment Factor and then rounded to the next higher thousandth.

No adjustment to increase the Monthly Income will be made after you reach age 65. However, if a benefit is payable beyond age 65 for a disability commencing prior to age 65, the Monthly Income applicable will be that as of the last increase.

### 3. Right to Purchase the Increase in Monthly Income

Upon recovery from disability, you are eligible to purchase additional coverage with no medical evidence of insurability if:

a) you return to fulltime gainful employment;
b) during your disability, adjustments were made to your Monthly Income under the provisions of this rider;
c) we are no longer paying you a benefit under this policy;
d) you are not 60 years of age or older; and
e) you submit an application for this coverage within 90 days after your disability ends.

The amount of additional coverage will be the difference between the monthly income paid (or in the case of residual disability, the monthly income used in the residual benefit calculation) in your last month of disability and your original monthly income as shown on page 3. Premium rates will be based on your attained age at the time of application and will be for the plan then in effect for your class.

This additional coverage applies to new periods of disability only.

### 4. Transition Benefit

The Monthly Income payable under this benefit will be the same as the Monthly Income paid in your last month of Total Disability.

### 5. Increase in Residual Disability Benefit

This applies only if your policy contains such a benefit. See page 3 of your policy.

The adjustment, as described above, will be applied to your Monthly Income when it is used in calculating Residual Disability Benefits. The adjustments will be determined as if the entire period of disability (residual and total) had been Total Disability.

### 6. Increase in Social Security Supplement Benefit

This applies only if your policy contains such a benefit. See page 3 of your policy.

The increase that applies is described in the Social Security Supplement Rider.

DI 86-36C4

### 7. Increase in Partial Disability Benefit

This applies only if your policy contains such a benefit. See page 3 of your policy.

The monthly Partial Disability benefit will be increased by the same adjustment, described above, as if the entire period of disability (partial and total) has been Total Disability.

### 8. Example

Below is an example of how benefits are calculated under this rider. The actual amounts payable will differ from those in the example if any of the conditions shown below are not the same as in this policy.

a) Monthly Income for Total Disability: $3,000.
b) Elimination Period: 90 days.
c) CPI-U as of the last day of the calendar month three months prior to the onset of disability: 300.
d) CPI-U as of the last day of the calendar month three months prior to the first Claim Anniversary Date: 315.
e) CPI-U as of the last day of the calendar month three months prior to the second Claim anniversary Date: 328.

| Year of Disability | Annual Adjustment Factor | Benefit Calculation | Benefit Payable |
|---|---|---|---|
| 1 (4th-12th months) | 1.000 | 1.000 x $3000 | $3000 |
| 2 (13th-24th months) | $\frac{315}{300} = 1.050$ | 1.050 x $3000 | $3150 |
| 3 (25th-36th months) | $\frac{328}{315} = 1.041$ | 1.050 x 1.041 = 1.094* | |
| | | 1.094 x 3000 | $3282 |

*1.094 = 1.09305 rounded to the next higher thousandth.

This rider does not affect other benefits payable under this policy.

Vice President and Secretary                    Chairman and Chief Executive Officer

DI 86-36C4

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

## GUARANTEED INSURABILITY RIDER

This rider is subject to all of the provisions of this policy. The cost for it is shown on page 3.

**OPTION DATES.** You may buy additional disability coverage, providing additional Monthly Income on any of the policy anniversaries up to and including the one nearest your 50th birthday.

**EXERCISES OF OPTION.** You are eligible to apply for the additional coverage only while this rider is in force. Application must be made during the 60 days before an option date. Additional amounts applied for are subject to our financial underwriting requirements. The premium for the additional coverage will be based on your age as of the birthday nearest the option date. The rate in effect for the same class of risk as under this policy will apply to the new coverage.

If you purchase additional coverage under this provisions of this rider and: 1) you are disabled as defined in this policy, and 2) we are waiving the premiums for this policy, then we will waive the premium for the additional coverage for as long as 1) and 2) continue.

**AGGREGATE OPTION AMOUNT.** This is shown on page 3. This means the total amount of additional coverage you are eligible to purchase. You may purchase this amount on one option date, or portions of this amount spread over any number of option dates. You may not purchase any more additional coverage (except as specified under "Requalification" below) once the total additional coverage purchased under the provisions of this rider equals the Aggregate Option Amount.

**REQUALIFICATION.** After your additional coverage purchased equals the Aggregate Option Amount, you may requalify for this amount if you submit evidence of your insurability satisfactory to us. There is no limit to the number of times prior to age 50 that you may requalify for the Aggregate Option Amount.

**LIMITATIONS.** The issuance of any new coverage is subject to the amounts that our underwriting limits allow based on your earnings. The limits used will be those in effect at the time of the option date, or those at the time of issuance of this rider, whichever are more liberal. Your earnings means your average monthly earned income for the six months before the date you applied for the new policy. (If you are totally or residually disabled on that date, we will use the six months that preceded the date your disability began.)

**GUARANTEED INCREASE.** We will allow you to purchase additional coverage on any option date equal to: the percent increase in the CPI-U (defined below) for the 12 month period which ends on the last day of the calendar month 6 months prior to the option date, multiplied by the policy's monthly income as shown on page 3. (For example, if your policy has a $3000 monthly income and the percent change in the CPI-U for the 12 month period is 5.0%, you are eligible to purchase $150 of additional coverage.) This guaranteed amount is not subject to any financial underwriting requirements or issue limits; but is subject to the following:

1) The amounts guaranteed are not cumulative from year to year.
2) We will guarantee, subject to 3) below, that you are able to purchase at least $50 of additional monthly coverage, regardless of the increase in the CPI-U.
3) the guaranteed amount can not exceed the amount of Aggregate Option Amount remaining.

The CPI-U means the Consumer Price Index for the United States, all items, all Urban Consumers. The CPI-U is published by the Bureau of Labor Statistics of the U.S. Department of Labor. If the method for determining this index is changed so that it becomes inconsistent with previous measures, or if this index is no longer published, we will substitute another index found to serve the same purpose.

**THE ADDITIONAL COVERAGE.** The additional coverage will have the same elimination period, renewal provision and maximum benefit period as this policy does, unless you and we agree in writing that they can be different.

The new coverage will:

1. Take effect on the option date.
2. Cover periods of total or residual disability (if a residual disability rider is included in the additional coverage) which start on or after the option date.
3. Not cover a period of total or residual disability which starts before the option date; or a "Recurrent Disability" (see the Recurrent Disabilities provision in your policy) which commences after the option date.
4. Be subject to all exclusions and/or waivers applicable to this policy.

DI 86-44

**OPTIONAL BENEFITS FOR THE ADDITIONAL COVERAGE.** If your policy contains a:

    1) Cost of Living Adjustment Rider
    2) Residual 65 Rider
    3) Hospital Confinement Rider

for which you are paying the extra premium shown on page 3, your additional coverage may contain these same optional benefits, without proof of insurability. There will be an additional premium for these optional benefit riders.

You may add other optional benefit riders (or these riders if they are not part of this policy) only if we agree. This may require proof of insurability satisfactory to us.

**TERMINATION.** This rider will terminate on the earliest of:

1. the option date nearest your 50th birthday. (This will not affect any right you have to buy additional coverage on that date.) There will be no further premium charges for this rider after that date.
2. 31 days after the due date of any unpaid premium for this policy or this rider, unless we are then waiving that premium.

Vice President and Secretary             Chairman and Chief Executive Officer

DI 86-44

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

## RESIDUAL DISABILITY INCOME RIDER

This rider provides a monthly benefit which is proportionate to your loss of income while you are Residually Disabled. It is subject to all of the provisions of this policy. The cost for it is shown on page 3.

**RESIDUAL DISABILITY** means that due to Injury or Sickness you suffer a Proportionate Loss of Income of at least 20% of Prior Monthly Earnings. It will not be considered to exist if you are not under the regular care and attendance of a Doctor (except as waived under this policy).

**MONTHLY EARNINGS** means income you receive during one month for services you perform, according to generally accepted accounting standards. It includes:
(1) salary; (2) wages; (3) bonuses; (4) commissions; (5) fees; or (6) other remuneration; after deduction of normal and customary business expenses but before deduction of any income taxes.

It does not include:
(1) dividends; (2) rents; (3) investments; (4) royalties; (5) annuities; (6) deferred profit sharing; or deferred compensation; (7) payments under a deferred compensation plan; (8) income from government plans; or (9) sick pay benefits from a formal wage or salary continuation plan for the first six months of Total or Residual Disability; or (10) any other unearned income.

**CURRENT MONTHLY EARNINGS** means the Monthly Earnings you receive while you are Residually Disabled. It does not include income received for services performed before the start of Residual Disability.

**PRIOR MONTHLY EARNINGS** means the greater of:
(1) your average Monthly Earnings for the 12 months; (2) your average Monthly Earnings for the calendar year; or (3) your highest average Monthly Earnings for any 24 consecutive months during the 60 month period; immediately before the start of your period of Residual Disability.

**INDEXING.** After you have been disabled for one year as defined in this policy, the Indexing Adjustment, shown on page 3, will be applied to your Prior Monthly Earnings when calculating benefits payable under this rider.

The adjustment for a continuous period of disability is:

(a) for the 2nd year (13th through 24th months): the percentage for Indexing Adjustment, shown on page 3;

(b) for each remaining year: the prior year's adjustment increased by the Indexing Adjustment, rounded to the next higher thousandth.

**PROPORTIONATE LOSS OF INCOME** means the amount of your Prior Monthly Earnings minus your Current Monthly Earnings, taken as a percent of your Prior Monthly Earnings. In other words:

$$\frac{\text{Prior Monthly Earnings - Current Monthly Earnings}}{\text{Prior Monthly Earnings}} \times 100\%$$

rounded to the nearest percent.

**BENEFIT AMOUNT.** The basic benefit is determined each month as follows:

$$\text{Proportionate Loss} \times \text{Monthly Income (shown on page 3)}$$

If a Supplemental Income rider or a Social Security Supplement rider is part of this policy, a supplemental benefit is determined each month as follows:

$$\text{Proportionate Loss} \times \text{Supplemental Income}$$

In this paragraph Supplemental Income means the amount of Supplemental Income or Social Security Supplement Income, shown on page 3.

If your Proportionate Loss of Income is at least 75% of Prior Monthly Earnings in any month, the benefit will be 100% of the Basic Monthly Income. During the first six months for which Residual Disability Income Benefits are payable, the benefit will be at least 50% of the Basic Monthly Income.

DI 90-52 PA

**RESIDUAL DISABILITY INCOME BENEFITS.** You qualify for benefits under this rider if your Residual Disability occurs while this rider is in force. Benefits are payable from the later of: (1) the day after the end of the Elimination Period; or (2) the day you return to work in Your Regular Occupation after your Residual Disability starts.

We will then pay you basic and if applicable, supplemental benefits for each month that your Residual Disability continues. If any portion of such period is less than a full month, we will pay 1/30 of the benefits for each day of it.

The Maximum Benefit Period for Residual Disability shown on page 3 applies to benefits payable under this rider. No benefit payable for a period that includes both Total and Residual Disability will be payable beyond the end of the Maximum Benefit Period for Residual Disability shown on page 3. However, you may receive Benefits Beyond Age 65 as provided on page 6 of this policy.

We will reduce your Residual Disability Income Benefits by any amount of first party income loss benefits paid under an automobile insurance policy issued or renewed pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Act of 1984.

Also, the supplemental benefit is payable only when benefits for Total Disability would have been payable under a Supplemental Income or Social Security Supplement rider if Total instead of Residual Disability had occurred.

**RECOVERY BENEFIT.** If you recover from your Injury or Sickness and are released from the regular care and attendance of a Doctor, we will continue to pay benefits, as described in this rider, provided that:

1) you are working at full-time gainful employment following a compensable period of Total or Residual Disability; and

2) your Proportionate Loss of Income is at least 20% of Prior Monthly Earnings; and

3) such Loss is due to the same cause as that for which benefits were paid.

This benefit will be paid, provided such Loss continues, for the greater of:

1) 6 months; or

2) one month for each compensable two month period of continuous period of Disability, subject to a maximum of 36 months.

No Recovery Benefits will be payable beyond Age 65. Premiums will be waived, in accordance with this policy's Waiver of Premium Provision, in each month that a benefit is payable. We will not pay you Recovery Benefits under this rider for any period that we are paying Monthly Income or Residual Disability Income Benefits.

**CONCURRENT TOTAL AND RESIDUAL DISABILITIES.** We will not pay you benefits under this rider for any period for which we pay you Monthly Income for Total Disability. This rider does not replace the other benefits payable under this policy.

**ELIMINATION PERIOD.** The Elimination Period may consist of: (1) a period of Total Disability; (2) a period of Residual Disability; or (3) a period that includes both Total and Residual Disability. This applies wherever the term Elimination Period is used in this contract.

**NOTICE OF RESIDUAL DISABILITY.** You must give us written notice of your Disability while you are still Disabled or as soon as reasonably possible.

**PROOF OF LOSS.** We have the right to require evidence monthly of:
(1) the continuance of Total or Residual Disability; and
(2) your Current and Prior Monthly Earnings.

We, or an independent accountant whom we retain, have the right to examine your business and personal financial records, including your income tax returns. We may examine these records as often as we reasonably require to confirm your Current Monthly Earnings.

**WAIVER OF PREMIUM.** This means that we will waive and refund premiums during Residual Disability on the same basis as we would if you were Totally Disabled. This applies to Residual as well as to Total Disability.

Vice President and Secretary                    Chairman and Chief Executive Officer

# *Definitions*

In this policy:

**ACCIDENT TOTAL DISABILITY** means Disability caused by Injury.

**AGE** means the first policy anniversary on or after the birthday on which you attain the specified year of age.

**DOCTOR** means a licensed practitioner of the healing arts, other than yourself, acting within the scope of that license.

**EFFECTIVE DATE** means the date, referred to as Effective Date on page 3 of this policy, when this policy becomes effective.

**ELIMINATION PERIOD** means the number of days at the beginning of the continuous period of Disability for which benefits are not payable. Successive periods of Disability may be used to satisfy the Elimination Period, subject to the criteria set forth under Recurrent Disabilities on page 6.

**DISABLED** or **DISABILITY** means Total Disability.

**INJURY** means your accidental bodily injury which occurs while this policy is in force.

**LOSS** means Disabled, except when stated as loss of life, loss of limb, or other similar expression.

**MAXIMUM BENEFIT PERIOD** refers to the length of time shown for that period on page 3.

**MONTHLY INCOME** refers to the amount of that income shown on page 3.

**PRESUMPTIVE TOTAL DISABILITY** means the entire irrecoverable loss, occurring while this policy is in force, of: (1) sight; or (2) the use of both hands; or (3) the use of both feet; or (4) the use of one hand and one foot; or (5) speech; or (6) hearing. It will be presumed to be Disability even if you engage in any occupation.

In the case of such a loss, you do not have to be under the regular care and attendance of a Doctor. We will waive the Elimination Period. We will pay the Monthly Income for life if Presumptive Total Disability starts before Age 65. If you renew this policy past Age 65 and if Presumptive Total Disability occurs on or after Age 65 while this policy is in force, we will pay the Monthly Income up to the earlier of 24 months or your death.

**SICKNESS** means your sickness or disease which is diagnosed or treated while this policy is in force.

**SICKNESS TOTAL DISABILITY** means Disability caused or contributed to by Sickness or by any of the following:

(1) hernia;

(2) bodily or mental infirmity;

(3) bacterial infection other than that stemming from injury on the exterior of the body;

(4) transplant of a part of your body to or from that of someone else;

(5) complications of pregnancy (Complications of pregnancy do not include false labor, morning sickness, or similar problems which may be part of a difficult pregnancy but are not classified as a distinct complication of pregnancy.);

(6) normal pregnancy or childbirth when the Disability continues for 90 days or the Elimination Period, whichever is longer;

(7) medical or surgical treatment of any of (1) through (6) above or of any sickness or disease.

Disability caused or contributed to by any of (1) through (7) above is not Accident Total Disability.

**TOTAL DISABILITY** means your inability due to Injury or Sickness to engage in the substantial and material duties of Your Regular Occupation until Age 65. Thereafter, it will mean your inability to engage in the substantial and material duties of any occupation for which your education, training, or experience reasonably qualifies you. It will not be considered to exist for any time you are not under the regular care and attendance of a Doctor.

**YOUR REGULAR OCCUPATION** means the occupation (or occupations, if more than one) in which your are regularly engaged for gain or profit at the time you become Disabled.

**YOU, YOUR,** and **YOURSELF** mean the insured.

**WE, OUR** and **US** mean The Equitable Life Assurance Society of the United States, whose principal place of business is 787 Seventh Avenue, New York, New York.

# *Benefit Provisions*

**TOTAL DISABILITY INCOME.** If Disability: (1) starts while this policy is in force; and (2) continues beyond the Elimination Period; we will pay the Monthly Income for each month of the period of Disability that extends beyond the Elimination Period. If any portion of such period is less than a full month, we will pay 1/30 of the Monthly Income for each day of it. We will not pay Monthly Income for longer than the Maximum Benefit Period even if your continuous period of Disability is due to: (1) more than one Injury; (2) more than one Sickness; or (3) Injury and Sickness.

**CONCURRENT DISABILITIES.** We will pay only a single Monthly Income for each month of Disability when caused or contributed to by: (1) both Injury and Sickness; (2) more than one Injury; or (3) more than one Sickness.

**RECURRENT DISABILITIES.** Successive periods of Total Disability or Residual Disability (if Residual Disability coverage is provided in this policy) will be considered one continuous period if: (1) they occur while this policy is in force; and (2) they result from the same or related causes; and (3) such periods were not separated by 12 months or more. This provision does not apply to the first 90 days of Total or Residual Disability due to normal pregnancy.

Successive periods of Disability which are considered to be one continuous period will be subject to one Elimination Period and one Maximum Benefit Period. Otherwise, they will be considered separate periods of Disability, subject to a new Elimination Period and a new Maximum Benefit Period.

**REHABILITATION.** If while Disabled, you take part in physical or occupational rehabilitative training designed to enable you to return to work in Your Regular Occupation, we will pay for it subject to our continued approval. For a continuous period of Disability, we will pay the actual cost for the training which is not otherwise covered by health care insurance, workers' compensation, or any public fund or program, up to a maximum of 12 times the Monthly Income shown on page 3. Taking part in such training will not in itself be deemed recovery from Disability. For your protection you should notify us in advance of any proposed training.

**BENEFITS BEYOND AGE 65.** We will pay Monthly Income for a limited time beyond Age 65 if: (1) benefits for Total Disability or Residual Disability (if Residual Disability coverage is provided in this policy) would otherwise stop at Age 65; (2) the Disability continues past Age 65; and (3) less than 24 months of payments have been made for that Disability. We will continue the payments until the earlier of: (1) the end of the Disability; or (2) 24 months of payments have been made for that Disability.

**TRANSITION BENEFIT.** If you die while: (1) Disabled; and (2) receiving a monthly benefit for Total or Residual Disability and are survived by your spouse, we will pay this policy's Monthly Income (including Cost of Living Adjustment if applicable) for a limited time to that spouse. If there is no surviving spouse, we will make such payment, equally divided, to all surviving dependent children for a limited time. The Disability must have existed for at least 12 continuous months or to the end of the Elimination Period, if longer. Such payments will end on the earliest of the following events: (1) when 6 monthly payments have been made; or (2) the death of all who are eligible to receive payment under this provision.

**PREMIUM REFUND AT DEATH.** If you die while this policy is in force, we will refund any unearned portion of the premium paid. At our option, we will pay it to: (1) your spouse; (2) your estate; or (3) any person who may be entitled to it.

Any payment made by us in good faith will discharge us to the extent of such payment.

**WAIVER OF PREMIUM.** If your Disability starts while this policy is in force and continues for 90 days, we will refund any premiums which were due and paid during that period. Successive periods of Disability may be used to satisfy this 90 day period, subject to the criteria set forth under Recurrent Disabilities on this page. We will then waive all premiums which come due while the Disability continues. The premium to be waived will be based upon the mode of payment in effect when the Disability began. If Disability ends before Age 65, you may resume premium payment on the next due date after the end of your Disability. The payment will be at the rate in effect at the start of your Disability.

## BENEFIT PROVISIONS (continued)

**MILITARY SERVICE.** If you enter full-time active duty in the military service, you may suspend this policy by sending us a written notice that you want to suspend. Full-time active duty does not include training that lasts three months or less.

The policy will not be in force while it is in suspension. We will refund any premium you paid for coverage during the period of suspension. When you leave the service you may reinstate your policy without evidence of insurability if: (1) you make written request to us within 60 days after leaving the service; and (2) you pay the pro-rata premium from the end of suspension to the next premium due date; and (3) the period for which the policy was suspended was not longer than 5 years.

The premium will be at the same rate as would have been payable if the policy had not been suspended. We will not cover any loss from Injury which occurred or Sickness that was first diagnosed or treated while the policy was suspended.

## *Pre-Existing Conditions Exclusion*

This policy does not cover any loss which is caused or contributed to by a pre-existing condition except as provided in the general provision Time Limit On Certain Defenses. A pre-existing condition is an Injury or Sickness for which during the 24 months before the Effective Date of this policy, a Doctor gave or recommended medical advice or treatment.

A condition that is disclosed on the application for this policy and which is not excluded from coverage by name or specific description is not a pre-existing condition. It will be covered as of the Effective Date of this policy.

## *Exceptions*

This policy does not cover any Loss which is caused or contributed to by a Pre-Existing Condition, as defined above.

## *Renewal Beyond Age 65*

You may continue this policy past Age 65. However, the following conditions apply:

(1) You must be working full-time for gain or profit at Age 65. Full-time work means that you are gainfully at work for at least 30 hours a week.

(2) We may ask for proof that you are working full-time while the policy continues in force past Age 65. This policy will terminate on the date you cease to be employed full-time (except by reason of Disability). However, coverage will continue to the end of any period for which we have accepted a premium.

(3) Optional benefits included in this policy are not available at or after Age 65.

(4) The Maximum Benefit Period for Disability beginning at or after Age 65 is 24 months.

(5) The Transition Benefit on page 6 is not available at or after Age 65.

(6) The premiums due at or after Age 65 will be based on our rates then in effect for your attained age. We can change the rates at any time. No change will be made unless it applies to all policies of the same class.

(7) We will not waive or refund premiums if you become Disabled at or after Age 65.

# *General Provisons*

**CONSIDERATION AND PAYMENT OF PREMIUMS.** We provide this insurance in exchange for payment of the required premium and the application for this policy. A copy of the application is attached to and becomes part of this policy when issued.

Premiums are payable on their due date. They are payable at our Home Office or any of our premium collection offices. Premiums are due for the Premium Period shown on page 3 or until your death if it comes first. The Premium Period starts on the Effective Date. You may ask us in writing to change the mode of premium payment. If we approve the change, the premium will be at the rate set by us for this policy. Approval of such a change will be subject to our minimum premium rules then in effect. If the request applies to the first premium, the request must be made at the time that premium is paid. If you fail to pay a premium by its due date the policy will terminate as of that date, except as set forth in the Grace Period provision on this page.

If we accept a premium for a period of coverage starting on or after your Age 65, coverage will continue until the end of the period for which the premium was accepted, except as set forth in Misstatement of Age provision on page 9.

**ENTIRE CONTRACT: CHANGES.** This policy, with the application and attached papers, is the entire contract. No change in this policy will be effective until approved by our President or one of our Vice Presidents. This approval must be noted on or attached to this policy. No Agent may change this policy or waive any of its provisions. No Agent has the authority to accept on our behalf any premium other than the first.

**TIME LIMIT ON CERTAIN DEFENSES.** After this policy has been in force during your lifetime for two years from the Effective Date, misstatements (except for fraudulent misstatements) made by you in the application cannot be used to void this policy or to deny a claim for Loss incurred or Disability that starts after the end of such two year period. Misstatements (except for fraudulent misstatements) on an application for a policy change that requires evidence of insurability, or any reinstatement of the policy cannot be used to void this policy or to deny a claim after the change or reinstatement has been in effect for two years during your lifetime.

No claim for Loss incurred or Disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition existed prior to the Effective Date. This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of Loss.

**POLICY CHANGES.** You may change this policy to another plan of Disability Income insurance; however, we must consent to the change.

**ASSIGNMENTS.** You may assign this policy. We will not be bound by any assignment you make, nor will it be deemed to be in force, until it has been filed in writing at our Home Office. We assume no responsibility for the validity of an assignment.

**GRACE PERIOD.** This policy has a 31 day grace period. This means that if a premium after the first one is not paid by the date it is due, it may be paid during the 31 days that follow. During the grace period the policy will stay in force.

**REINSTATEMENT.** If any premium after the first one is not paid before the grace period ends, then this policy will lapse. Later acceptance of premium by us without requiring an application for reinstatement will reinstate this policy.

If we require an application, we will give a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of its disapproval.

The reinstated policy will only cover Loss resulting from such accidental injury as may be sustained after the date of reinstatement and Loss due to such sickness as may begin more than ten (10) days after such date. In all other respects your and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

**NOTICE OF CLAIM.** Written notice of claim must be given within 30 days after a covered Loss starts or as soon as reasonably possible. This notice can be given to us at our Home Office or to one of our Agents. Notice should include your name and policy number.

## GENERAL PROVISIONS (continued)

**CLAIM FORMS.** When we receive your notice of claim, we will send you forms for filing Proof of Loss. If these forms are not given to you within 15 days, you can meet the Proof of Loss requirements by giving us a written statement of the nature and extent of your Loss within the time limit stated in Proof of Loss on this page.

**PROOF OF LOSS.** If the policy provides for periodic payment for a continuing Loss, written Proof of Loss satisfactory to us must be given within 90 days from the end of each monthly period for which we are liable. For any other Loss, such proof must be given within 90 days of that Loss.

If it is not reasonably possible to give proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. However, you must notify us no later than one year from the time proof is otherwise required; unless you are legally incapacitated.

Written Proof of Loss must be furnished to the Equitable at its Home Office.

**TIME OF PAYMENT OF CLAIMS.** After receiving written proof of Loss, we will pay monthly all benefits then due you for Disability. Any balance that remains unpaid when our liability ends will be paid at that time. Benefits for any other Loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS.** Benefits will be paid to you. Any loss of life benefits are payable in accordance with the beneficiary designation in effect at the time of payment. If none is then in effect, the benefits will then be paid to your estate. Any other benefits unpaid at death may be paid at our option either to your beneficiary or to your estate.

If benefits are payable to your estate or to a beneficiary who cannot execute a valid release, we may pay benefits up to $1,000 to someone related to you or your beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**UNPAID PREMIUM.** When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

**EXAMINATIONS.** We have the right to have you examined, at our expense, as often as reasonably necessary while a claim is pending.

**WAIVER OF MEDICAL CARE REQUIREMENT.** We may waive the requirement that you be under the regular care and attendance of a Doctor if we receive satisfactory proof that your Injury or Sickness no longer requires such care under prevailing medical standards. This waiver must be in writing. We may revoke this waiver if we feel that the regular care and attendance of a Doctor is necessary at some subsequent time while you are still Totally or Residually Disabled (if Residual Disability coverage is provided in this policy).

**LEGAL ACTION.** No legal action may be brought to recover on this policy within 60 days after written Proof of Loss has been given as required by this policy. No such action may be brought after 3 years from the time written Proof of Loss is required to be given.

**MISSTATEMENT OF AGE.** If your age has been misstated, the benefits of the policy will be those that the premium would have purchased at the correct age. If, based upon your correct age, the policy would not have provided coverage, our liability will be limited to refund of premiums for the period not covered.

**POLICY YEARS AND ANNIVERSARIES.** The first policy year begins on the Effective Date. All other policy years begin on the anniversary of the Effective Date. These anniversaries are the policy anniversaries.

| | | | THE |
|---|---|---|---|
| **POLICY NUMBER** | 93   703   022 | | **EQUITABLE** |

THE EQUITABLE
LIFE ASSURANCE SOCIETY
OF THE UNITED STATES

**THE INSURED**   MR RONALD R FERRARA

**EFFECTIVE DATE**   FEB 25, 1993                          *DISABILITY*

**MONTHLY INCOME**   $1,500.00                             *INCOME*

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, New York, New York

We will pay benefits that this policy provides for loss that results from Injury or Sickness. Injury and Sickness are defined on page 5. This agreement is subject to the exceptions and other provisions of this policy.

## NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

This policy cannot be cancelled by us before you reach age 65. If you pay the premium in accordance with policy provisions, it will continue in force until the first policy anniversary on or after your 65th birthday. Before then and while the policy is in force, we cannot increase the premium schedule.

## NOTICE OF 10 DAY RIGHT TO EXAMINE POLICY

Within 10 days after you receive this policy, you may return it to us or to the agent through whom you bought it with a request that it be cancelled. That request and return will void the policy from the beginning. We will then refund any premium paid.

The provisions on the following pages are a part of this contract.

This is a non-participating policy.

Vice President and Secretary                    Chairman and Chief Executive Officer

DI 133 PA-6

Exhibit "B"

# *TABLE OF CONTENTS*

|  | *Page* |
|---|---|
| Renewable | 1 |
| Ten-day Right to Examine Policy | 1 |
| Definitions | 5 |
| Benefit Provisions | 6 |
| Concurrent and Recurrent Disabilities | 6 |
| Premium Waived or Refunded | 6 |
| Pre-Existing Conditions Exclusion | 7 |
| Exceptions | 7 |
| General Provisions | 8 |
| Grace Period | 8 |
| Reinstatement | 8 |

## IMPORTANT NOTICE

This policy is a legal contract between you and the Equitable Life Assurance Society of the United States. PLEASE READ YOUR POLICY CARE-FULLY.

```
THE INSURED      RONALD R FERRARA              FEB 25, 1993     EFFECTIVE DATE
                                                        PPA
MONTHLY INCOME     $4,067.00                    SN 93 703 022   POLICY NUMBER
       FOR
TOTAL DISABILITY                                         M      SEX
```

ELIMINATION PERIOD -  90 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60       - LIFETIME OF INSURED
        COMMENCING AT AGE 60 OR LATER  - TO AGE 65
    FOR RESIDUAL DISABILITY            - TO AGE 65

                COMPOSITE BENEFITS AND PREMIUMS TABLE

| BENEFITS | ANNUAL PREMIUM* | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $3,427.87 | TO AGE 65 |
| RESIDUAL DISABILITY<br>    INDEXING ADJUSTMENT 6% | 425.37 | TO AGE 65 |
| COST OF LIVING ADJUSTMENT<br>    4% TO  6%    ANNUALLY - BASED ON CPI-U | 1,068.56 | TO AGE 65 |
| GUARANTEED INSURABILITY -<br>    AGGREGATE OPTION AMOUNT $1,500 | 34.45 | SEE PAGE 86-44 |

FIRST PREMIUM DUE ON OR BEFORE REVISED BENEFIT EFFECTIVE DATE OF FEB 25, 1999

PREMIUMS              $4,956.28 DUE FEB 25, 1999 AND EVERY 12 MONTHS
                          THEREAFTER DURING PREMIUM PERIOD

                    IN ADDITION, THE PREMIUMS WILL BE REDUCED BASED UPON THE
                    EXPIRY OF THE OPTIONS IN ACCORDANCE WITH THE ABOVE TABLE

                REVISED ISSUE DATE     FEB 11, 1999

131-3-718 SERIES 131    DIPL65    PAGE THREE  NSD*  1999-02-11  1999-02-11 1334

```
THE INSURED    RONALD R FERRARA          FEB 25, 1993    EFFECTIVE DATE
                                              PPA
MONTHLY INCOME    $1,500.00               N 93 703 022    POLICY NUMBER
     FOR
TOTAL DISABILITY                              40 M        ISSUE AGE & SEX
```

ELIMINATION PERIOD -  90 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY      - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
       COMMENCING BEFORE AGE 60       - LIFETIME OF INSURED
       COMMENCING AT AGE 60 OR LATER - TO AGE 65
    FOR RESIDUAL DISABILITY           - TO AGE 65

### BENEFITS AND PREMIUMS TABLE

| BENEFITS | SEMI-ANNUAL PREMIUM* | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $401.97 | . TO AGE 65 |
| RESIDUAL DISABILITY | 51.22 | TO AGE 65 |
|    INDEXING ADJUSTMENT 6% | | |
| COST OF LIVING ADJUSTMENT | | |
|    4% TO  6%   ANNUALLY - BASED ON CPI-U | 132.33 | TO AGE 65 |
| GUARANTEED INSURABILITY - | | |
|    AGGREGATE OPTION AMOUNT $1,500 | 17.58 | SEE PAGE 86-44 |

FIRST PREMIUM          $603.10 DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS    $603.10 DUE AUG 25, 1993 AND EVERY  6 MONTHS
                        THEREAFTER DURING PREMIUM PERIOD

           IN ADDITION, THE PREMIUMS WILL BE REDUCED BASED UPON THE
           EXPIRY OF THE OPTIONS IN ACCORDANCE WITH THE ABOVE TABLE

               DATE OF ISSUE    MAR 22, 1993

# AMENDMENT TO APPLICATION

Name of Proposed
Insured     **MR RONALD R FERRARA**     Application Dated   **FEB 25, 1993**

Policy No.   **93703022**

---

## TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
This application is hereby amended by the undersigned in the following particulars:

ISSUED WITH MONTHLY INCOME TO BE $1500

ISSUED WITH GUARANTEED INSURABILITY RIDER AGGREGATE AMOUNT OF $1500.

WITH ANSWER TO QUESTION #6 ON PART I OF APPLICATION AMENDED TO READ
NONE

This amendment is to be taken as a part of said application, subject to the agreement therein contained: said application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the policy or contract. To the best of my knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment.

Dated at _____on_____ 19_____
              (City )                         (State)

_____         _____
Signature of Purchaser if other than Applicant        Signature of Applicant

Agent: _____

Agency:

180-237E App: Amendment.

**APPLICATION PART I FOR NON-CANCELLABLE DISABILITY INSURANCE TO**

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
## NEW YORK, N.Y.

### 1. PROPOSED INSURED

a. Print name as it is to appear on the policy:
RONALD R. FELLARA

b. ☑ Mr.  ☐ Miss  ☐ Doctor  c. ☒ Male
   ☐ Mrs.  ☐ Ms.  ☐ Other Title  ☐ Female

d. Birth date Month/Day/Year 2-22-53   e. Age nearest birthday 40

f. Place of Birth (state) PA

g. Citizenship (country) USA

h. Social Security or Tax Number 191441289

i. Residence City, State, Zip DOWNINGTOWN 19335 PA

### 2. OCCUPATION

a. Current Occupation(s) SALES MANAGER KITCHEN AID

b. Current Duties SALES OF APPLIANCES DEALERS WHOLESALE

c. Nature of Business APPLIANCE SALES

d. Type of organization: ☐ S Corporation ☒ Corporation
   ☐ Sole Proprietorship  ☐ Partnership  ☐ Other

e. Are you now working on a full-time basis? ☒ Yes ☐ No

f. Do you intend to change your occupation and/or employer within the next year? ☐ Yes ☒ No

### 3. EARNINGS

a. Source of your gross earned income after business expenses?

|  | Current Annual Rate | Actual Prior Calendar Year |
|---|---|---|
| 1. Current primary occupation? | $ 60,000 | $ 60,000 |
| 2. Any other occupations? | $ | $ |

b. What contributions are made on your behalf to pension funds or profit sharing plans which will not continue in the event of disability? $ -0- $

c. What is your NET unearned income (from investments, rents, dividends)? $ $

d. What part of your earned income would continue during disability? (show amt.) $ -0- For how long? ____ mos.

e. Does your total net worth exceed $2,000,000? (Omit personal residence) ☐ Yes ☒ No

If yes, in Details Section, show cash, savings, stocks and bonds, real estate, business interests and value of vested pension fund or profit sharing plan, etc.

**DETAILS SECTION PROVIDED ON PAGES 2 & 3**

### 4. DISABILITY INCOME INSURANCE APPLIED FOR

a. Monthly Income Amount: DI $ 1500 Other $ _____
* Describe other coverage(s) _____ and complete appropriate Supplement(s)

b. Will coverage be paid for by employer? ☐ Yes ☒ No
   If "yes" how much? ____ %

c. Occupational Class: 4 A   Plan PL65

d. Elimination Period: 90 days

e. Optional Benefits
   COLA (choose one) ☒ 4-6% CPI  ☐ 6-8% CPI
   ☒ Residual 65/W or  ☐ Proportionate Loss of Income
   ☒ Guaranteed Insurability Aggregate Amount $ 1500
   ☐ Soc. Sec. Supp.E.P. ____ days $/mo ____
   ☐ Fixed Income E.P. ____ Term ____ $/mo ____
   ☐ Other Optional Benefits:

### 5. ADDITIONAL INFORMATION

a. Will the insurance applied for replace any existing insurance? If yes, indicate in 6 below ☐ Yes ☒ No
   When is the next premium due date for this existing insurance?

b. What is the premium payment mode? SEMI ANNUALLY

c. Do you now have pending an application, or do you intend to apply within the next six months, for any other disability, life or medical insurance? (If Yes, state companies and amounts in Details Section.) ☐ Yes ☒ No

d. Have you ever had an application for any insurance, or for renewal or reinstatement of any insurance, declined, postponed, rated-up in premium or otherwise modified, or a policy rescinded? (State companies and full details in Details Section.) ☐ Yes ☒ No

e. Have you ever applied for or received any type of income or premium waiver benefit or worker's compensation award as a result of disability? (State payer and cause in Details Section.) ☐ Yes ☒ No

f. Have you smoked a cigarette in the past 12 months? ☐ Yes ☒ No

g. Have you ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (if yes, complete Driving questionnaire) ☐ Yes ☒ No

h. Did you within the past year, or do you intend to travel or reside outside the United States? ☐ Yes ☒ No

### 6. OTHER INSURANCE

Describe all Disability Income and Overhead Expense coverage in force. Include disability benefits in life coverage, pension, union welfare, state disability, civil service, employer or employee benefit plans for franchise or association plans. If none, write "none."

| Company or Organization | Type of Coverage* | Policy # | Amount of Monthly Income | Maximum Benefit Period Acc | Maximum Benefit Period Sick | To Be Replaced Yes | To Be Replaced No | Employer Funded Yes | Employer Funded No | Fully Offset By Social Security Yes | Fully Offset By Social Security No |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. N/A |  |  |  |  |  |  |  |  |  |  |  |
| 2. |  |  |  |  |  |  |  |  |  |  |  |
| 3. |  |  |  |  |  |  |  |  |  |  |  |

*Key  I—Individual   G—Group   A—Association   E—Employer Sick Pay or Union   BOE—Business Overhead Expense

**APPLICATION PART II**

**(Complete questions 1-5 only if application is on non-medical basis.)**

**1.  PROPOSED INSURED**

. Height: **6** ft. **2** in.   Weight: **258** lbs.   b. Have you had a weight change of more than
10 pounds in the last 12 months?   ☐ Yes   ■ No

. Name and address of your personal physician: (If none, so state):
DR BRENNER    MED CENTER #100    EXTON PA

. Date and reason last consulted if within the last 5 years: 199✗  COLD

. What treatment was given or recommended? ANTIBIOTIC

**2.**

Are you now under medical observation or taking medical treatment? _____  ☐ Yes  ☒ No

**3.**

Have you ever been medically treated for or had: (Circle the applicable items)

a. Diabetes, tumor, cancer, glandular or skin disease or disorder?   ☐ Yes ☒ No
b. Emotional, psychological, mental or nervous system disease or disorder; convulsions or epilepsy?   ☐ Yes ☒ No
c. Chest pain, high blood pressure, heart attack, stroke or any other disease or disorder of the heart or blood vessels?   ☐ Yes ☒ No
d. Any disease or disorder of the respiratory or digestive systems, including hernia, ulcer, or liver disorder?   ☐ Yes ☒ No
e. Any disease or disorder of the urinary or reproductive systems? Are you now pregnant?   ☐ Yes ☒ No
f. Any disease or disorder of the blood or lymphatic systems?   ☐ Yes ☒ No
g. Any disease or disorder of the muscles or bones, including the back, neck, spine or joints?   ☐ Yes ☒ No
h. Any disease or disorder of eyes, ears, nose, throat or speech?   ☐ Yes ☒ No

**4.**

Have you within the last 10 years:

a. Been medically treated for or medically advised to have treatment for a sexually transmitted disease, including Gonorrhea, Syphilis, Herpes Simplex II, or Hepatitis B?   ☐ Yes ☒ No
b. Been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids-Related Complex (ARC)?   ☐ Yes ☒ No
c. Been medically treated by a member of the medical profession for AIDS or ARC?   ☐ Yes ☒ No
d. Used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics except as prescribed by a physician (other than yourself, if you are a physician)?   ☐ Yes ☒ No
e. Received medical treatment regarding the use of alcohol or drugs?   ☐ Yes ☒ No

**5.**

Other than above, have you within the past 5 years:

a. Consulted or been examined or treated by any physician or practitioner, or visited a psychiatrist, psychologist, psychiatric social worker, psychotherapist or counselor for any reason?   ☒ Yes ☐ No
b. Been a patient in a hospital, clinic, sanatorium, or other medical facility? Had any diagnostic test?   ☐ Yes ☒ No
c. Been medically advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?   ☐ Yes ☒ No
d. Had any illness, injury, or surgery? Have you any deformity, lameness or amputation?   ☐ Yes ☒ No

**6.  DETAILS**

Give details of Yes answers for parts 1 & 2. Include Question Number, Diagnosis and Treatment, Results, Dates and Duration, Names and addresses of all attending physicians and medical facilities, where applicable. Continuation sheet on Page 3 provided for additional details:

A.  DR. F. R. BATZER M.D.    815 LOCUST ST    PHILA PA
FERTILITY DOCTOR -    BJU SEMEN TESTS

SHEET USED   ☐ Yes ☒ No

This conditional receipt must not be detached unless the application is signed and the first premium is collected.

## AGREEMENT

It is hereby agreed by the undersigned that:

If all of the following conditions precedent to insurance are fulfilled, that is

(a) a completed and properly signed application, Part 1 and Part 2, is furnished to The Equitable, and at least one twelfth of the annual premium for the policy is paid; and

(b) to the best of my knowledge and belief the statements and answers in all parts of the application were true and complete when made and continue to be true and complete, without material change, as of the time of payment of such premium; and

(c) the Equitable is satisfied after such investigation and medical examinations as it may require that the Proposed Insured is at the time of payment of such premium insurable under its rules and standards for insurance either exactly as applied for or at a higher premium rate or for a lesser amount of insurance or on some other modified or restricted basis;

then the insurance for which the Proposed Insured is so insurable shall—upon the terms of the policy The Equitable would issue—take effect at either the time of payment of such full first premium or the time of completion of Part 2 of the application, whichever is later.

Unless the conditions precedent specified in (a), (b) and (c) above are fulfilled, no insurance shall take effect.

If the policy is issued other than exactly as applied for, then unless it is accepted and any balance of premium due thereon is paid on or before the 20th day after the "Date of Issue" stated in the policy, the policy shall not take effect and all insurance shall terminate on such 20th day.

If a policy does not take effect, any premium paid in connection with this application will be returned.

If insurance becomes payable under this Agreement, the premium paid for it will be retained.

The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief and are made to induce The Equitable to enter into this Agreement and to issue any policy which may be issued upon this application. No agent or medical examiner has authority to modify this Agreement or to waive any of The Equitable's rights or requirements.

Amount Paid _____ Other $ _____
With Application: DI $ _____ OE $ _____

(Checks must be drawn to the order of Equitable Life and are received subject to collection.)

Signature of
Proposed Insured (X) _Ronald Ferrara_

Dated at DOWNINGTOWN City PA State

Dated on
Mo/Day/Year 2-25-93

Signature of
Agent _____

V- 07863

## ACKNOWLEDGEMENT AND AUTHORIZATIONS

**UNDERWRITING PROCEDURES**
I have received a statement of the underwriting procedures of The Equitable Life Assurance Society of the United States (Equitable), which describes how and why Equitable obtains information on my insurability, to whom such information may be reported and how I may obtain it. The statement also contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS**
**To Obtain Medical Information** I authorize any physician, hospital, other medical practitioner or facility, insurance company, and the Medical Information Bureau to release to Equitable and its legal representative any and all information they may have about any diagnosis, treatment and prognosis regarding my physical or mental condition.
**To Obtain Non-Medical Information** I authorize any employer, business associate, government unit, financial institution, Consumer Reporting Agency, and the Medical Information Bureau to release to Equitable and its legal representative any information they may have about any claim of eligibility for benefits or my occupation, avocations, finances, driving record, character and general reputation. I authorize Equitable to obtain investigative consumer reports, as appropriate.

Date
Mo/Day/Year 2-25-93

**To Use and Disclose Information** I understand that the information that I authorize Equitable to obtain will be used by Equitable to help determine my insurability or my eligibility for benefits under an existing policy.
I authorize Equitable to release information about my insurability to its reinsurers, my Equitable Agent, and to the Medical Information Bureau, all as described in the statement of Equitable's underwriting procedures, or to other persons or businesses performing business or legal services in connection with my application or claim of eligibility for benefits, or as may be otherwise lawfully required or as I may further authorize.
I understand that I have the right to learn the contents of any report of information (through my physician, in the case of medical information).

**COPY OF AUTHORIZATIONS**
I have a right to ask for and receive a true copy of this Acknowledgement and Authorizations signed by me. I agree that a reproduced copy will be as valid as the original.

**DURATION**
I agree that these authorizations will be valid for 12 months from the date shown below.

_Ronald Ferrara_
Signature of Proposed Insured

25551

4

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
## CPI COST OF LIVING ADJUSTMENT RIDER 65

This rider is subject to all of the provisions of this policy. The cost for it is shown on page 3.

### 1. Definitions

CPI-U means the Consumer Price Index for the United States, all items, all Urban Consumers. The CPI-U is published by the Bureau of Labor Statistics of the U.S. Department of Labor. If the method for determining this index is changed so that it becomes inconsistent with previous measures, or if this index is no longer published, we will substitute another index found to serve the same purpose.

CLAIM ANNIVERSARY DATE means the date immediately following each 12 month period of continuous disability.

ANNUAL ADJUSTMENT FACTOR means the CPI-U as of the last day of the calendar month three months before the current Claim Anniversary Date divided by the CPI-U as of the last day of the calendar month three months before the previous Claim Anniversary Date (or the onset of disability date, if you are beginning the second year of disability). This factor will be rounded to the nearer thousandth.

The Annual Adjustment Factor in any year will never be lower than 1.040 or higher than 1.060.

### 2. Increase in Total Disability Benefit

After you have been Disabled, as defined in this policy for 1 year, the Annual Adjustment Factor will be applied on each Claim Anniversary Date to increase your Monthly Income for that continuous period of Total Disability.

The adjustment to be applied to the Monthly Income shown on page 3 is:
a) for the 2nd year (13th through 24th months), the Annual Adjustment Factor;
b) for each remaining year, the prior year's adjustment again increased by the Annual Adjustment Factor and then rounded to the next higher thousandth.

No adjustment to increase the Monthly Income will be made after you reach age 65. However, if a benefit is payable beyond age 65 for a disability commencing prior to age 65, the Monthly Income applicable will be that as of the last increase.

### 3. Right to Purchase the Increase in Monthly Income

Upon recovery from disability, you are eligible to purchase additional coverage with no medical evidence of insurability if:
a) you return to fulltime gainful employment;
b) during your disability, adjustments were made to your Monthly Income under the provisions of this rider;
c) we are no longer paying you a benefit under this policy;
d) you are not 60 years of age or older; and
e) you submit an application for this coverage within 90 days after your disability ends.

The amount of additional coverage will be the difference between the monthly income paid (or in the case of residual disability, the monthly income used in the residual benefit calculation) in your last month of disability and your original monthly income as shown on page 3. Premium rates will be based on your attained age at the time of application and will be for the plan then in effect for your class.

This additional coverage applies to new periods of disability only.

### 4. Transition Benefit

The Monthly Income payable under this benefit will be the same as the Monthly Income paid in your last month of Total Disability.

### 5. Increase in Residual Disability Benefit

This applies only if your policy contains such a benefit. See page 3 of your policy.

The adjustment, as described above, will be applied to your Monthly Income when it is used in calculating Residual Disability Benefits. The adjustments will be determined as if the entire period of disability (residual and total) had been Total Disability.

### 6. Increase in Social Security Supplement Benefit

This applies only if your policy contains such a benefit. See page 3 of your policy.

The increase that applies is described in the Social Security Supplement Rider.

**7. Increase in Partial Disability Benefit**

This applies only if your policy contains such a benefit. See page 3 of your policy.

The monthly Partial Disability benefit will be increased by the same adjustment, described above, as if the entire period of disability (partial and total) has been Total Disability.

**8. Example**

Below is an example of how benefits are calculated under this rider. The actual amounts payable will differ from those in the example if any of the conditions shown below are not the same as in this policy.

a) Monthly Income for Total Disability: $3,000.
b) Elimination Period: 90 days.
c) CPI-U as of the last day of the calendar month three months prior to the onset of disability: 300.
d) CPI-U as of the last day of the calendar month three months prior to the first Claim Anniversary Date: 315.
e) CPI-U as of the last day of the calendar month three months prior to the second Claim anniversary Date: 328.

| Year of Disability | Annual Adjustment Factor | Benefit Calculation | Benefit Payable |
|---|---|---|---|
| 1 (4th-12th months) | 1.000 | 1.000 x $3000 | $3000 |
| 2 (13th-24th months) | $\frac{315}{300} = 1.050$ | 1.050 x $3000 | $3150 |
| 3 (25th-36th months) | $\frac{328}{315} = 1.041$ | 1.050 x 1.041 = 1.094* | |
| | | 1.094 x 3000 | $3282 |

*1.094 = 1.09305 rounded to the next higher thousandth.

This rider does not affect other benefits payable under this policy.

Vice President and Secretary                Chairman and Chief Executive Officer

DI 86-36C4

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

## GUARANTEED INSURABILITY RIDER

This rider is subject to all of the provisions of this policy. The cost for it is shown on page 3.

**OPTION DATES.** You may buy additional disability coverage, providing additional Monthly Income on any of the policy anniversaries up to and including the one nearest your 50th birthday.

**EXERCISES OF OPTION.** You are eligible to apply for the additional coverage only while this rider is in force. Application must be made during the 60 days before an option date. Additional amounts applied for are subject to our financial underwriting requirements. The premium for the additional coverage will be based on your age as of the birthday nearest the option date. The rate in effect for the same class of risk as under this policy will apply to the new coverage.

If you purchase additional coverage under this provisions of this rider and: 1) you are disabled as defined in this policy, and 2) we are waiving the premiums for this policy, then we will waive the premium for the additional coverage for as long as 1) and 2) continue.

**AGGREGATE OPTION AMOUNT.** This is shown on page 3. This means the total amount of additional coverage you are eligible to purchase. You may purchase this amount on one option date, or portions of this amount spread over any number of option dates. You may not purchase any more additional coverage (except as specified under "Requalification" below) once the total additional coverage purchased under the provisions of this rider equals the Aggregate Option Amount.

**REQUALIFICATION.** After your additional coverage purchased equals the Aggregate Option Amount, you may requalify for this amount if you submit evidence of your insurability satisfactory to us. There is no limit to the number of times prior to age 50 that you may requalify for the Aggregate Option Amount.

**LIMITATIONS.** The issuance of any new coverage is subject to the amounts that our underwriting limits allow based on your earnings. The limits used will be those in effect at the time of the option date, or those at the time of issuance of this rider, whichever are more liberal. Your earnings means your average monthly earned income for the six months before the date you applied for the new policy. (If you are totally or residually disabled on that date, we will use the six months that preceded the date your disability began.)

**GUARANTEED INCREASE.** We will allow you to purchase additional coverage on any option date equal to: the percent increase in the CPI-U (defined below) for the 12 month period which ends on the last day of the calendar month 6 months prior to the option date, multiplied by the policy's monthly income as shown on page 3. (For example, if your policy has a $3000 monthly income and the percent change in the CPI-U for the 12 month period is 5.0%, you are eligible to purchase $150 of additional coverage.) This guaranteed amount is not subject to any financial underwriting requirements or issue limits; but is subject to the following:

  1) The amounts guaranteed are not cumulative from year to year.
  2) We will guarantee, subject to 3) below, that you are able to purchase at least $50 of additional monthly coverage, regardless of the increase in the CPI-U.
  3) the guaranteed amount can not exceed the amount of Aggregate Option Amount remaining.

The CPI-U means the Consumer Price Index for the United States, all items, all Urban Consumers. The CPI-U is published by the Bureau of Labor Statistics of the U.S. Department of Labor. If the method for determining this index is changed so that it becomes inconsistent with previous measures, or if this index is no longer published, we will substitute another index found to serve the same purpose.

**THE ADDITIONAL COVERAGE.** The additional coverage will have the same elimination period, renewal provision and maximum benefit period as this policy does, unless you and we agree in writing that they can be different.

The new coverage will:

1. Take effect on the option date.
2. Cover periods of total or residual disability (if a residual disability rider is included in the additional coverage) which start on or after the option date.
3. Not cover a period of total or residual disability which starts before the option date; or a "Recurrent Disability" (see the Recurrent Disabilities provision in your policy) which commences after the option date.
4. Be subject to all exclusions and/or waivers applicable to this policy.

DI 86-44

**OPTIONAL BENEFITS FOR THE ADDITIONAL COVERAGE.** If your policy contains a:

   1) Cost of Living Adjustment Rider
   2) Residual 65 Rider
   3) Hospital Confinement Rider

for which you are paying the extra premium shown on page 3, your additional coverage may contain these same optional benefits, without proof of insurability. There will be an additional premium for these optional benefit riders.

You may add other optional benefit riders (or these riders if they are not part of this policy) only if we agree. This may require proof of insurability satisfactory to us.

**TERMINATION.** This rider will terminate on the earliest of:

1. the option date nearest your 50th birthday. (This will not affect any right you have to buy additional coverage on that date.) There will be no further premium charges for this rider after that date.
2. 31 days after the due date of any unpaid premium for this policy or this rider, unless we are then waiving that premium.

Vice President and Secretary           Chairman and Chief Executive Officer

DI 86-44

# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

## RESIDUAL DISABILITY INCOME RIDER

This rider provides a monthly benefit which is proportionate to your loss of income while you are Residually Disabled. It is subject to all of the provisions of this policy. The cost for it is shown on page 3.

**RESIDUAL DISABILITY** means that due to Injury or Sickness you suffer a Proportionate Loss of Income of at least 20% of Prior Monthly Earnings. It will not be considered to exist if you are not under the regular care and attendance of a Doctor (except as waived under this policy).

**MONTHLY EARNINGS** means income you receive during one month for services you perform, according to generally accepted accounting standards. It includes:
(1) salary; (2) wages; (3) bonuses; (4) commissions; (5) fees; or (6) other remuneration; after deduction of normal and customary business expenses but before deduction of any income taxes.

It does not include:
(1) dividends; (2) rents; (3) investments; (4) royalties; (5) annuities; (6) deferred profit sharing; or deferred compensation; (7) payments under a deferred compensation plan; (8) income from government plans; or (9) sick pay benefits from a formal wage or salary continuation plan for the first six months of Total or Residual Disability; or (10) any other unearned income.

**CURRENT MONTHLY EARNINGS** means the Monthly Earnings you receive while you are Residually Disabled. It does not include income received for services performed before the start of Residual Disability.

**PRIOR MONTHLY EARNINGS** means the greater of:
(1) your average Monthly Earnings for the 12 months; (2) your average Monthly Earnings for the calendar year; or (3) your highest average Monthly Earnings for any 24 consecutive months during the 60 month period; immediately before the start of your period of Residual Disability.

**INDEXING.** After you have been disabled for one year as defined in this policy, the Indexing Adjustment, shown on page 3, will be applied to your Prior Monthly Earnings when calculating benefits payable under this rider.

The adjustment for a continuous period of disability is:

(a) for the 2nd year (13th through 24th months): the percentage for Indexing Adjustment, shown on page 3;

(b) for each remaining year: the prior year's adjustment increased by the Indexing Adjustment, rounded to the next higher thousandth.

**PROPORTIONATE LOSS OF INCOME** means the amount of your Prior Monthly Earnings minus your Current Monthly Earnings, taken as a percent of your Prior Monthly Earnings. In other words:

$$\frac{\text{Prior Monthly Earnings - Current Monthly Earnings}}{\text{Prior Monthly Earnings}} \times 100\%$$

rounded to the nearest percent.

**BENEFIT AMOUNT.** The basic benefit is determined each month as follows:

Proportionate Loss x Monthly Income (shown on page 3)

If a Supplemental Income rider or a Social Security Supplement rider is part of this policy, a supplemental benefit is determined each month as follows:

Proportionate Loss x Supplemental Income

In this paragraph Supplemental Income means the amount of Supplemental Income or Social Security Supplement Income, shown on page 3.

If your Proportionate Loss of Income is at least 75% of Prior Monthly Earnings in any month, the benefit will be 100% of the Basic Monthly Income. During the first six months for which Residual Disability Income Benefits are payable, the benefit will be at least 50% of the Basic Monthly Income.

DI 90-52 PA

**RESIDUAL DISABILITY INCOME BENEFITS.** You qualify for benefits under this rider if your Residual Disability occurs while this rider is in force. Benefits are payable from the later of: (1) the day after the end of the Elimination Period; or (2) the day you return to work in Your Regular Occupation after your Residual Disability starts.

We will then pay you basic and if applicable, supplemental benefits for each month that your Residual Disability continues. If any portion of such period is less than a full month, we will pay 1/30 of the benefits for each day of it.

The Maximum Benefit Period for Residual Disability shown on page 3 applies to benefits payable under this rider. No benefit payable for a period that includes both Total and Residual Disability will be payable beyond the end of the Maximum Benefit Period for Residual Disability shown on page 3. However, you may receive Benefits Beyond Age 65 as provided on page 6 of this policy.

We will reduce your Residual Disability Income Benefits by any amount of first party income loss benefits paid under an automobile insurance policy issued or renewed pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Act of 1984.

Also, the supplemental benefit is payable only when benefits for Total Disability would have been payable under a Supplemental Income or Social Security Supplement rider if Total instead of Residual Disability had occurred.

**RECOVERY BENEFIT.** If you recover from your Injury or Sickness and are released from the regular care and attendance of a Doctor, we will continue to pay benefits, as described in this rider, provided that:

1) you are working at full-time gainful employment following a compensable period of Total or Residual Disability; and

2) your Proporionate Loss of Income is at least 20% of Prior Monthly Earnings; and

3) such Loss is due to the same cause as that for which benefits were paid.

This benefit will be paid, provided such Loss continues, for the greater of:

1) 6 months; or

2) one month for each compensable two month period of continuous period of Disability, subject to a maximum of 36 months.

No Recovery Benefits will be payable beyond Age 65. Premiums will be waived, in accordance with this policy's Waiver of Premium Provision, in each month that a benefit is payable. We will not pay you Recovery Benefits under this rider for any period that we are paying Monthly Income or Residual Disability Income Benefits.

**CONCURRENT TOTAL AND RESIDUAL DISABILITIES.** We will not pay you benefits under this rider for any period for which we pay you Monthly Income for Total Disability. This rider does not replace the other benefits payable under this policy.

**ELIMINATION PERIOD.** The Elimination Period may consist of: (1) a period of Total Disability; (2) a period of Residual Disability; or (3) a period that includes both Total and Residual Disability. This applies wherever the term Elimination Period is used in this contract.

**NOTICE OF RESIDUAL DISABILITY.** You must give us written notice of your Disability while you are still Disabled or as soon as reasonably possible.

**PROOF OF LOSS.** We have the right to require evidence monthly of:
(1) the continuance of Total or Residual Disability; and
(2) your Current and Prior Monthly Earnings.

We, or an independent accountant whom we retain, have the right to examine your business and personal financial records, including your income tax returns. We may examine these records as often as we reasonably require to confirm your Current Monthly Earnings.

**WAIVER OF PREMIUM.** This means that we will waive and refund premiums during Residual Disability on the same basis as we would if you were Totally Disabled. This applies to Residual as well as to Total Disability.

Vice President and Secretary                    Chairman and Chief Executive Officer

DI 90-52 PA

# *Definitions*

In this policy:

**ACCIDENT TOTAL DISABILITY** means Disability caused by Injury.

**AGE** means the first policy anniversary on or after the birthday on which you attain the specified year of age.

**DOCTOR** means a licensed practitioner of the healing arts, other than yourself, acting within the scope of that license.

**EFFECTIVE DATE** means the date, referred to as Effective Date on page 3 of this policy, when this policy becomes effective.

**ELIMINATION PERIOD** means the number of days at the beginning of the continuous period of Disability for which benefits are not payable. Successive periods of Disability may be used to satisfy the Elimination Period, subject to the criteria set forth under Recurrent Disabilities on page 6.

**DISABLED or DISABILITY** means Total Disability.

**INJURY** means your accidental bodily injury which occurs while this policy is in force.

**LOSS** means Disabled, except when stated as loss of life, loss of limb, or other similar expression.

**MAXIMUM BENEFIT PERIOD** refers to the length of time shown for that period on page 3.

**MONTHLY INCOME** refers to the amount of that income shown on page 3.

**PRESUMPTIVE TOTAL DISABILITY** means the entire irrecoverable loss, occurring while this policy is in force, of: (1) sight; or (2) the use of both hands; or (3) the use of both feet; or (4) the use of one hand and one foot; or (5) speech; or (6) hearing. It will be presumed to be Disability even if you engage in any occupation.

In the case of such a loss, you do not have to be under the regular care and attendance of a Doctor. We will waive the Elimination Period. We will pay the Monthly Income for life if Presumptive Total Disability starts before Age 65. If you renew this policy past Age 65 and if Presumptive Total Disability occurs on or after Age 65 while this policy is in force, we will pay the Monthly Income up to the earlier of 24 months or your death.

**SICKNESS** means your sickness or disease which is diagnosed or treated while this policy is in force.

**SICKNESS TOTAL DISABILITY** means Disability caused or contributed to by Sickness or by any of the following:

(1) hernia;

(2) bodily or mental infirmity;

(3) bacterial infection other than that stemming from injury on the exterior of the body;

(4) transplant of a part of your body to or from that of someone else;

(5) complications of pregnancy (Complications of pregnancy do not include false labor, morning sickness, or similar problems which may be part of a difficult pregnancy but are not classified as a distinct complication of pregnancy.);

(6) normal pregnancy or childbirth when the Disability continues for 90 days or the Elimination Period, whichever is longer;

(7) medical or surgical treatment of any of (1) through (6) above or of any sickness or disease.

Disability caused or contributed to by any of (1) through (7) above is not Accident Total Disability.

**TOTAL DISABILITY** means your inability due to Injury or Sickness to engage in the substantial and material duties of Your Regular Occupation until Age 65. Thereafter, it will mean your inability to engage in the substantial and material duties of any occupation for which your education, training, or experience reasonably qualifies you. It will not be considered to exist for any time you are not under the regular care and attendance of a Doctor.

**YOUR REGULAR OCCUPATION** means the occupation (or occupations, if more than one) in which your are regularly engaged for gain or profit at the time you become Disabled.

**YOU, YOUR, and YOURSELF** mean the insured.

**WE, OUR and US** mean The Equitable Life Assurance Society of the United States, whose principal place of business is 787 Seventh Avenue, New York, New York.

## *Benefit Provisions*

**TOTAL DISABILITY INCOME.** If Disability: (1) starts while this policy is in force; and (2) continues beyond the Elimination Period; we will pay the Monthly Income for each month of the period of Disability that extends beyond the Elimination Period. If any portion of such period is less than a full month, we will pay 1/30 of the Monthly Income for each day of it. We will not pay Monthly Income for longer than the Maximum Benefit Period even if your continuous period of Disability is due to: (1) more than one Injury; (2) more than one Sickness; or (3) Injury and Sickness.

**CONCURRENT DISABILITIES.** We will pay only a single Monthly Income for each month of Disability when caused or contributed to by: (1) both Injury and Sickness; (2) more than one Injury; or (3) more than one Sickness.

**RECURRENT DISABILITIES.** Successive periods of Total Disability or Residual Disability (if Residual Disability coverage is provided in this policy) will be considered one continuous period if: (1) they occur while this policy is in force; and (2) they result from the same or related causes; and (3) such periods were not separated by 12 months or more. This provision does not apply to the first 90 days of Total or Residual Disability due to normal pregnancy.

Successive periods of Disability which are considered to be one continuous period will be subject to one Elimination Period and one Maximum Benefit Period. Otherwise, they will be considered separate periods of Disability, subject to a new Elimination Period and a new Maximum Benefit Period.

**REHABILITATION.** If while Disabled, you take part in physical or occupational rehabilitative training designed to enable you to return to work in Your Regular Occupation, we will pay for it subject to our continued approval. For a continuous period of Disability, we will pay the actual cost for the training which is not otherwise covered by health care insurance, workers' compensation, or any public fund or program, up to a maximum of 12 times the Monthly Income shown on page 3. Taking part in such training will not in itself be deemed recovery from Disability. For your protection you should notify us in advance of any proposed training.

**BENEFITS BEYOND AGE 65.** We will pay Monthly Income for a limited time beyond Age 65 if: (1) benefits for Total Disability or Residual Disability (if Residual Disability coverage is provided in this policy) would otherwise stop at Age 65; (2) the Disability continues past Age 65; and (3) less than 24 months of payments have been made for that Disability. We will continue the payments until the earlier of: (1) the end of the Disability; or (2) 24 months of payments have been made for that Disability.

**TRANSITION BENEFIT.** If you die while: (1) Disabled; and (2) receiving a monthly benefit for Total or Residual Disability and are survived by your spouse, we will pay this policy's Monthly Income (including Cost of Living Adjustment if applicable) for a limited time to that spouse. If there is no surviving spouse, we will make such payment, equally divided, to all surviving dependent children for a limited time. The Disability must have existed for at least 12 continuous months or to the end of the Elimination Period, if longer. Such payments will end on the earliest of the following events: (1) when 6 monthly payments have been made; or (2) the death of all who are eligible to receive payment under this provision.

**PREMIUM REFUND AT DEATH.** If you die while this policy is in force, we will refund any unearned portion of the premium paid. At our option, we will pay it to: (1) your spouse; (2) your estate; or (3) any person who may be entitled to it.

Any payment made by us in good faith will discharge us to the extent of such payment.

**WAIVER OF PREMIUM.** If your Disability starts while this policy is in force and continues for 90 days, we will refund any premiums which were due and paid during that period. Successive periods of Disability may be used to satisfy this 90 day period, subject to the criteria set forth under Recurrent Disabilities on this page. We will then waive all premiums which come due while the Disability continues. The premium to be waived will be based upon the mode of payment in effect when the Disability began. If Disability ends before Age 65, you may resume premium payment on the next due date after the end of your Disability. The payment will be at the rate in effect at the start of your Disability.

**BENEFIT PROVISIONS (continued)**

**MILITARY SERVICE.** If you enter full-time active duty in the military service, you may suspend this policy by sending us a written notice that you want to suspend. Full-time active duty does not include training that lasts three months or less.

The policy will not be in force while it is in suspension. We will refund any premium you paid for coverage during the period of suspension. When you leave the service you may reinstate your policy without evidence of insurability if: (1) you make written request to us within 60 days after leaving the service; and (2) you pay the pro-rata premium from the end of suspension to the next premium due date; and (3) the period for which the policy was suspended was not longer than 5 years.

The premium will be at the same rate as would have been payable if the policy had not been suspended. We will not cover any loss from Injury which occurred or Sickness that was first diagnosed or treated while the policy was suspended.

## Pre-Existing Conditions Exclusion

This policy does not cover any loss which is caused or contributed to by a pre-existing condition except as provided in the general provision Time Limit On Certain Defenses. A pre-existing condition is an Injury or Sickness for which during the 24 months before the Effective Date of this policy, a Doctor gave or recommended medical advice or treatment.

A condition that is disclosed on the application for this policy and which is not excluded from coverage by name or specific description is not a pre-existing condition. It will be covered as of the Effective Date of this policy.

## Exceptions

This policy does not cover any Loss which is caused or contributed to by a Pre-Existing Condition, as defined above.

## Renewal Beyond Age 65

You may continue this policy past Age 65. However, the following conditions apply:

(1) You must be working full-time for gain or profit at Age 65. Full-time work means that you are gainfully at work for at least 30 hours a week.

(2) We may ask for proof that you are working full-time while the policy continues in force past Age 65. This policy will terminate on the date you cease to be employed full-time (except by reason of Disability). However, coverage will continue to the end of any period for which we have accepted a premium.

(3) Optional benefits included in this policy are not available at or after Age 65.

(4) The Maximum Benefit Period for Disability beginning at or after Age 65 is 24 months.

(5) The Transition Benefit on page 6 is not available at or after Age 65.

(6) The premiums due at or after Age 65 will be based on our rates then in effect for your attained age. We can change the rates at any time. No change will be made unless it applies to all policies of the same class.

(7) We will not waive or refund premiums if you become Disabled at or after Age 65.